CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street
Suite 2080
San Francisco, CA 94104
Telephone: 415-362-6252
Facsimile: 415-677-9445

Attorney for Defendant DIANA JING JING HOJSAK,
a/k/a JING JING LU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br> DIANA JING JING HOJSAK, <br> a/k/a JING JING LU, <br><br> Defendant. | No. CR 07-0325-PJH <br><br> **DECLARATION OF MICHAEL YELL IN SUPPORT OF A MOTION TO DEPOSE A FOREIGN WITNESS** |

I, Michael Yell, declare under penalty of perjury

I am currently employed as a director for Symantec Ltd, Asia Pacific and Japan and have held that position for two years.

I was previously employed as the general manager for Fujitsu Australia in charge of technology Products and Distribution Channels.

DECLARATION OF MICAEL YELL IN SUPPORT OF MOTION TO DEPOSE FOREIGN WITNESS
No. CR 07-0325-PJH

In the course of my employment I spend approximately two weeks a month on the road.

I only receive 20 days of vacation a year

I am an Australian Citizen. I do not believe I am subject to service of process by an American Court.

My travel schedule is very fluid as it changes when business issues arise. I generally do not get more than 6-7 weeks notice of travel and often get less than one month and some occasions must travel with a week or less of notice.

Coming to the United States for trial would be very difficult because I come to the United States only for work. Those trips are ordinarly short in duration and it is usually important to return to Asia, because my job is to run the Asian operations and keep them running smoothly. It is logistically almost impossible to do that job from the United States.

I have approximately 15 direct reports across the region, and each of those direct reports has several people who report to them. It is necessary for me to be in constant contact with my reports and spend face time with them and our main customers.

Although I would like to help Diana with my testimony, due to the pressure of business and sales targets that are required to be met and my travel schedule, I am unable to appear for a trial in the United States.

I would however, agree, with notice, to appear for a depostion, in Singapore or another agreed upon location in Asia, where I could coordinate that deposition with my

DECLARATION OF MIKE YELL IN SUPPORT OF MOTION TO DEPOSE FOREIGN WITNESS
No. CR 07-0325-PJH

1  At that deposition I would testify that ATI owed me substantial sums for consulting
2  services.
3  Prior to signing my consulting agreement with ATI, I owed Diana Lu several
4  million dollars.
5  
6  Although these obligations are separate, and arise from separate events, I used the
7  funds I received from consulting for ATI to repay my preexisting debt to Diana Lu.
8  I am enclosing a copy of the consulting agreement that documents my agreement
9  with ATI.
10 
11 
12 Dated: December 10, 2007          Respectfully submitted,

                                    Michael Yell

DECLARATION OF MICAEL YELL IN SUPPORT OF MOTION TO DEPOSE FOREIGN WITNESS
No. CR 07-0325-PJH

Page 3 of 3

# EXHIBIT A

98 Aug 01 21:47    Yell                                    61992672              Aug. 01 1998 03:45PM P1
FROM : L1111111111111                    PHONE NO. : 7553353327

## Consulting Agreement

This Agreement ("Agreement") is made between Michael Yell, (Consultant) having offices at 14 Ocean Ave Newport beach, NSW Australia 2106 and Ms. Diana Lu wholly owned enterprise (LU) having office at 3002 Aguasul Drive, Soquel, CA95073, USA and are each individually referred to herein as a "Party" and collectively as the "Parties."

This Agreement shall become effective on the date as of which both Parties have executed this Agreement (the "Effective Date"). This agreement is entered into as of Aug. 1, 1998 by and between Diana Lu' wholly owned enterprise (Lu) and Mike Yell(consultant):

### RECITALS

Lu hereby retain Consultant as in independent contractor to perform consulting services for Lu from time to time and Consultant is willing to perform such as services, on the terms set forth more fully below. In consideration of the mutual promises herein Lu and Consultant agree as follows

1. **Services:** Consultant agrees to perform the services ( "Services") described in appendix 1 executed by Consultant and Lu from time to time during the term of the this Agreement. Consultant will perform all Services in a workmanlike manner according to the schedule of work set forth in the applicable.

2. **Payment for the services:** Lu will pay Consultant the fee set forth in the applicable Statement of Service which listed in appendix 1.

3. **Term:** This Agreement will commence on the first date of signature for three years, and will be automatically renewed unless notified.

4. **Relationship of Parties:** Consultant will perform the services under the direction of Lu. Consultant, however will determine in Consultant's sole discretion the manner and means by which the services are accomplished. Consultant is an independent contractor without authority to bind Lu by contract or otherwise, and neither Consultant nor Consultant's employees or agent are agents or employees of Lu.

5. **Personnel:** Consultant and its possible employees or agents will observe the working hours, working rules ( including without limitation confidentiality requirements) and holidays

### NONDISCLOSURE

(a) **Confidential Information.** The Parties acknowledge that in the course of performing their obligations hereunder each may receive information, which is confidential and proprietary to the other ("Confidential Information"). Such Confidential information includes non-public information or materials, including without limitation written or printed documents and computer disks or tapes, whether machine or user readable containing such information, that (i) relates to released or unreleased consultant products or processes, including updates, patches, or other modifications; the marketing or promotion of any product or reports and Consultant's business policies or practices; (ii) is disclosed by one Party to the other in tangible or written form and clearly marked "Confidential" (or with a similar proprietary legend), or (iii) is disclosed by one Party to the other in confidence in connection with this Agreement and the Parties' performance hereunder.

(b) **Exclusions.** Confidential information does not include information or materials that the receiving Party can demonstrate (i) is on the date hereof, or hereafter becomes, through no

98 Aug 01 21:47      Yell                                              61992672
FROM : L[1111211111111                    PHONE NO. : 7553353327         Aug. 01 1998   P.2

act or failure to act or violation of this Agreement on the part of the receiving Party, generally known or available to the public, (ii) was known or possessed by the receiving Party before its receipt from the disclosing Party, (iii) is hereafter rightfully obtained by the receiving Party from a third party, without breach of any obligation to the disclosing Party, or (iv) is independently developed by the receiving Party, without use of or reference to the Confidential Information, by persons who had no access to the Confidential Information.

(c) **Allowed Use and Disclosure of Confidential Information.** The Parties covenant and agree not to disclose the terms of this Agreement or any other details as to its relationship to any third party without the other Party's prior written consent. Each Party covenants and agrees that neither it nor its agents, employees, officers, directors or representatives will use any of the Confidential Information except in performance of this Agreement. Each Party further covenants and agrees to protect the Confidential Information obtained from the other with the same degree of care as it uses to protect its own Confidential Information of like importance, but in no event less than reasonable care. The receiving Party may disclose Confidential Information only to its employees and other contractors having a "need-to-know" for the purposes of this Agreement. For purposes of this Agreement, the receiving Party will notify and inform those employees and contractors of the receiving Party's obligations regarding use of Confidential Information and will obtain or have obtained from its employees and contractors agreements requiring them to comply with these obligations. Each Party will provide notice to the other Party immediately after learning of or having reason to suspect a breach of any of the confidentiality obligations set forth in this Agreement.

**FORCE MAJEURE.**
Neither party will be in default or liable for any delay or failure to comply with this Agreement due to any act beyond the control of the affected party, excluding labor disputes, provided such party immediately notifies the other.

**AMENDMENTS.**
This Agreement may only be amended by a writing specifically referencing this Agreement which has been signed by authorized representatives of the parties.

The parties acknowledge that they have read this Agreement, understand it, and agree to be bound by its terms and conditions. Further, they agree that this Agreement is the complete and exclusive statement of the agreement between the parties, superseding all proposals or other prior agreement, oral or written, and all other communications between the parties relating to this subject.

This Agreement may be signed by each Party's respective duly authorized representatives in one or more counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one single agreement between the Parties hereto. Once signed, any reproduction of this Agreement or its Amendment made by reliable means (for example photocopy or facsimile) is considered an original.

**AGREED**

Signed: _[signature]_           Signed: _[signature]_
Diana Ln
Date: Aug 1, 1998              Date: 1/8/98

## Appendix I
### Statement of Services

**Services to be provided**

Services will be stipulated at this under the guidance from Lu and with the requirement to support Lu's existing business (such as conducting compliancy reviews) and explore new business opportunities. From time to time Consultant provide the services in and not limited to management consulting, intensive coaching / guidance, crisis resolution, product analysis, international market development, sales &expansion strategy. Consultancy services can be provided via tele-conferencing, or other verbal communication, written communications and or other manner which shall be required by Lu from case to case and from time to time. Consultant shall render such services for the above described projects as may be necessary to be completed in a professional manner.

**Territory:** Asia Pacific, possible Europe and North America with Yell's associates.

**Fee Schedule and condition**

A fee will not be entitled for payment until consultant enables Lu to generate sales revenue and gross profit. (Or a fee can be applied under the condition that Lu generates gross gain due to the Consultancy's service), due to the nature of the Service is demanding and lengthy (time consuming), may be labor consuming, complicated with uncertainty and risk of the business, and similar research and analysis of the market, product and business environment in different territories, a min. $200k to $300k annually shall be the standard of the fee, the delayed consultancy fee can be deferred to the following year. Consultant agrees to waive the interest for the delayed fee payment. An annual invoice shall be submitted by Consultant after both parties reviewing Lu's annual sales revenue and gross profit, otherwise requested differently which shall be discussed and agreed by both parties.

**Special Term**

Consultant (in this case Michael Yell) shall be willing to work for Lu diligently, if Lu has not generated any gross gain within Agreement duration, consultant shall be willing to give up the claim of the fee up to $xmillion in order to pay back the debt, which Consultant owed to Lu $xmillion as personal loan for the purpose of mutual interest of investment and ended in a loss in early 1997. This shall be Lu's sole discretion, and the consultant will be notified by Lu when it occurs. Consultant will apply best endeavors to pay back the existing borrowings through Consultant's own means to apply required skills and services for/to Lu. In case Consultant renders services exceed $xmillion as consultancy fee, Lu has obligation to pay the relevant fee accordingly, which shall be reviewed and agreed mutually when it occurs.

Consultant and Lu agree to pay the fee in the mutually agreed appointed account which shall be discussed and determined when it occurs. Once consultant receive the fee, Consultant shall pay back the loan that owed to Diana Lu, otherwise subject to Diana Lu's other request, which shall be Diana Lu's sole discretion. Consultant and Lu may modify the agreement from time to time which shall be discussed and agreed mutually. In case Consultant could not fulfill the required assignment, the service fee shall be reduced accordingly after annual review.

**Term Duration**

This Statement of Services becomes effective on the date of signature by Consultant and Lu. Or unless otherwise specified herein. The term of this Statement of Services shall begin on the effective date Aug. 1, 1998, and shall continue until July 31, 2001 ( the Termination Date). This Statement Services shall be automatically renewed unless this Statement of Services is terminated earlier in accordance with the Agreement.

In Witness whereof, the parties hereto have signed this Statement of Services as of the date first written above. The signed facsimile copy shall be mutually acceptable and effective.

Lux: [signature]
Date: Aug. 1, 1998

Consultant: [signature]
Date: Aug. 1, 1998