CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA  94104-6702
Telephone: 415/362-6252
Facsimile: 415/677-9445

Attorney for Defendant DIANA JING JING HOJSAK LU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. CR 07-0325-PJH |
| | ) | |
|      Plaintiff, | ) | **MOTION FOR RELEASE OF** |
| | ) | **FUNDS** |
|     v. | ) | |
| | ) | |
| DIANA JING JING HOJSAK, | ) | |
| a/k/a JING JING LU, | ) | |
| | ) | |
| | ) | |
|      Defendant. | ) | |
| | ) | |
| _____ | ) | |

Diana Hojsak is a multitalented business woman whose job is to connect the United States and Chinese markets.  She is currently the CEO of IGI, an international firm engaging in cross-cultural business consulting, publishing, design and promoting global brands.  IGI recently launched its new endeavor, an upscale fashion line inspired by the best influences from the West and East.  This complete line of clothing includes business attire, evening gowns, separates, handbags and accessories.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ms. Hojsak is charged with evading her taxes for the tax years 2001 and 2002. At that time she, on behalf of ATI, acted as a sales agent for an optical fiber company in the China market. Prior to that time, she had leveraged her knowledge of both China and the West into a variety of lucrative positions in the international telecom industry. Her life is literally an open book and is chronicled in the autobiography <u>Daughter of the Yellow River</u>.

Ms. Hojsak knew she was under investigation for a year before she was indicted, retained counsel prior to indictment and surrendered when indicted. Upon her surrender, bail was set at the amount of $250,000.00 which was secured by her home in San Francisco.

Almost contemporaneously with her indictment, Ms. Hojsak settled a civil case with YOFC, a Chinese Optical Fiber Company. Although the details of that settlement are confidential, some of those details were discussed in chambers with the court. Again, many of the details of that litigation are set out in Ms. Hojsak's book. At the time of her initial appearance, the government expressed concern that Ms. Hojsak would literally take the money from her settlement and leave the United States. Obviously, this has not happened. Since her indictment, she has been working hard at IGI and attempting to recover from the financial reversals caused by her civil litigation. In order to assuage the government's concern's that she would literally take the money and run, Ms. Hojsak agreed to deposit a substantial portion of the settlement from her civil litigation into counsel's trust account. Ms. Hojsak did so. In November,Ms. Hojsak applied to this Court for the release of those funds so she can use them in her business. The Court authorized

the release of $200,000.00 of the funds; and the government indicated it had concerns that

Ms. Hojsak was somehow a flight risk, alleging the value of the home she had posted for

bail had somehow declined and that she had engaged in a "Liquidation of Real Property"

and had dissipated funds she had received from the sale of other properties she had

previously owned.

The government argued that:

"Defendant became aware that she was being investigated by the Internal Revenue Service Criminal Investigation Division approximately May 2006. Motion for Release of Funds, p. 2, line 9. Three months later, in August 2006, Defendant sold a parcel of real property. See Certified Copy of Grant Deed, Exhibit 2 hereto. Thereafter, in February 2007, Defendant refinanced her only other known parcel of real property, located at 111 Chestnut Street, San Francisco, withdrawing $1,000,000.00.4 See Certified Copy of First Page of Deed of Trust, Exhibit 3 hereto. Defendant provided an appraisal of that property indicating its value as $1,350,000. The United States is not aware of the balance on any other deed of trust with respect to the Chestnut property. However, the foregoing does evidence that Defendant has liquidated most of her real property in the United States within nine months of becoming aware of a criminal investigation of her US tax liability."

As we represented to the Court at the hearing on our original motion, the

government's claims about Ms. Hojsak's alleged dissipation of assets lack factual support.

We are attaching as exhibit A the closing statement from the first parcel refereed to

by the government and located at 403 Main Street in San Francisco.  That closing

statement shows that the Ms. Hojsak's net proceeds from the sale were only $137,000.00

and the bulk of the funds went to pay off a mortgage.  The $137,000.00 of net proceeds

were used in Ms. Hojsak's business.

In connection with her home, rather than "withdrawing $1,000,000.00" as claimed

by the government, as the Court can tell from the attached closing statement, (Exhibit B) Ms. Hojsak simply refinanced her existing mortgage, and withdrew only $134,000.00 which she put into her business.  Accordingly, rather than "liquidating her assets" and withdrawing millions of dollars as claimed by the government, Ms. Hojsak has been simply managing her funds in an orderly manner.

Finally, at the hearing the Court and the government expressed a concern that the values of Ms. Hojsak's home may have declined since the property was posted. Accordingly, we have obtained an updated appraisal, which indicates that in accordance with reports in the popular press, this prime piece of San Francisco real estate has not gone down in value since it was originally posted and that there is at least $350,000 in equity in the property Exhibit C.  This is more than enough to support the $250,000 bond in this case.

Ms. Hojsak now requests that the remainder of her funds held by counsel be returned to her for use in her business.

As indicated previously, Ms. Hojsak is in the process of launching a new fashion line.  Counsel was recently privileged to view the debut of the line.  From the locale of the launch[1], to the cut of the clothing, to the carriage of the models on the runway, it is clear that the launch of this fashion line is an expensive venture.  Ms. Hojsak would like to use her funds to fund her new clothing line since hoped for alternative sources of funding are unavailable.  The use of these funds will strengthen, rather than weaken, Ms. Hojsak's ties

---

[1] The Four Seasons in San Francisco.

to the Bay Area, because the funds will be used to finance a serious, ongoing business. Most of the money will be spent on marketing, promotion, labor, showroom, office leases and other activities in the United States.  Contemporaneously, with this motion, we are filing under seal copies of spreadsheets which indicate Ms. Hojsak's expenditures in her business as well as bank statements which support the entries in the spreadsheets.[2]

This documentation demonstrates that there was no liquidation of assets as charged by the government; Ms Hojsak did not pocket one million dollars from her home; her home has not declined in value and she has been using her funds in the business. Accordingly, we request that the balance of her funds be released to her so that she may continue to use them in her business.

Ms. Hojsak's business, as detailed in her autobiography, her work with IGI and her current fashion venture all depend upon Ms. Hojsak's ability to use her knowledge of Chinese and American societies to combine their features for profit.  Ms. Hojsak is unlikely to permanently return to China, because such a return, with the accompanying inability to come back to the United States would devastate her business which depends upon access to both China and the United States.  Instead, as indicated above, Ms. Hojsak is actively attempting to expend her business and has launched a new fashion line, here in the United States.  Since our last appearance before this Court, Ms. Hojsak has been selected as the featured designer in two upcoming high Profile fashion events in the United States and anticipates that she will also be selected to present her line at additional high

---

[2] This is a tax case and there are no reasons to share this information with the government.

profile fashion events and trade shows throughout the year.  We will include the press

releases for those events in our under seal filing, and provide them to the government

under separate cover.  These selections demonstrate the substance of her business, her ties

to the United States and the ongoing strengthening of those ties.

Ms. Hojsak is neither a flight risk nor a danger, as demonstrated by her surrender in

this case, the posting of her home, her return to the United States following permitted

overseas travel, and her continued investment in her United States business.  At this point

she respectfully seeks the return of all of her funds so that she may use them to continue

her business and further strengthen her ties to the United States.

Date: February 14, 2008                    /S/ Christopher Cannon_____
                                           Christopher J. Cannon
                                           Counsel for Diana Hojsak Lu