JOSEPH RUSSONIELLO (CSBN 44332)
United States Attorney
THOMAS MOORE (ASBN 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
CYNTHIA STIER (DCBN 423256)
Assistant United States Attorney
9th Floor Federal Building
 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102
 Telephone: (415) 436-7000

Attorneys for United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DIANA LU<br>a/k/a Diana Jing Jing Hojsak,<br>a/k/a Jing Jing Lu,<br>a/k/a Diana Hojsak,<br><br>    Defendant. | No. CR-07-0325-PJH<br><br>**DECLARATION OF CYNTHIA STIER IN SUPPORT OF UNITED STATES' REPLY** |

I, Cynthia Stier, do hereby declare as follows:

1. I am an Assistant United States Attorney for the Northern District of California, and in such capacity represent the defendant, the United States of America, in this action. I have personal knowledge of the facts set forth in this declaration and, if called upon to do so, could and would testify competently thereto.

2. Attached hereto is a copy of the File Note from the April 11, 2008 Interview of Michael Yell which was obtained pursuant to a request for the assistance of the Australian authorities pursuant to Article 25 of the Double Tax Convention between Australia and the United States, S. Treaty Doc. No. 107-20, 2001 WL 34047726 (Treaty), to obtain the documents

# FILE NOTE

## INTERVIEW - MICHAEL YELL - 11 APRIL 2008

### Interview Preamble

1. Allowed us to digitally record interview if we provide a copy of transcript.

2. Interview was voluntary.

3. Advised Micheal he could terminate at any time.

4. Not obliged to answer questions but if you do answer truthfully.

5. Assisted at interview by accountant Neil Wickenden (HLB Mann Judd).

### Relationship with Mr Liu

1. Known her for some period.

2. In 1990's she had funds available for investment. Asked Michael Yell to invest those funds on her behalf in shares. Yell says that shares were purchased in her name and that investments were lost in "period of Asian Crisis". Said that investment was in millions of dollars.

3. At no stage did Yell borrow funds from Liu. He was acting in his words as an "agent". Investments were in her name, not his, funds and shares were always property of Liu.

4. As a result of investment loss Yell says, in his own words, that he felt a "moral obligation" to assist Liu.

5. Liu asked if she could use his HSBC account in Hong Kong so as to move funds an hide funds from her husband at the time that she was divorcing.

6. Yell said that the account with HSBC at the time had about $500 US in it, never used it.

7. Yell said he filled in forms at the bank with Liu allowing Liu to have operating and signatory rights on the account.

8. Yell said he has never received statements on the account until recently being sent a statement by Liu's defence attorney. He said that the address on the statement is not an address that he is aware of.



**Consultancy Work**

1. Yell confirmed that he did provide some advice to Liu in regard to activities that she was undertaking in Asia with ATI in relation to staffing issues. This advice was mainly oral and involved reviewing spreadsheets that she provided to Yell. He may have also produced and provided Liu with some of his own spreadsheets.

2. He confirmed that he may have issued some invoices to Liu under the name of Yell Consulting. He could not recall how many invoices and for how much and over which period.

3. I asked him about the total amount he may have issued the invoices for but he confirmed he could not recall. I asked him for a ball park figure but he could not confirm. I asked if it was more or less than $1 million but he could not confirm. When I said that deposits into his account (HSBC) indicated $US2 million approximately he expressed surprise.

4. Yell said that he had never received funds from Ms Liu in respect of the invoices he issued to her. He felt that the work he was doing was as a result of the "moral obligation" he had towards her. He has never "chased" her for the invoices to be paid.

**Loan from Liu**

1. Yell refuted the proposition that he had borrowed money from Liu in the past and that he has a debt to repay. He states that there is no loan agreement and that there is no loan.

2. Yell states that in his mind no funds ever transferred from Liu to him in the context of a loan.

3. Yell provided advice to Liu regarding investments. At no point did Liu provide funds to Yell for his own personal use. All investments were in the name of Liu.

4. Yell believes that he does not have a debt to Ms Liu rather a moral obligation to provide assistance where he can.

**HSBC Transactions**

1. Yell said that he had never seen a statement from HSBC in relation to this account.

2. He was unaware of the transactions on the account until provided with information by Mr Christopher Cannon Attorney for Ms Liu.

3. Yell through his adviser Mr Wickenden contacted Mr Cannon to ask for information regarding the US proceedings.

2

INFORMATION IS FURNISHED UNDER THE PROVISIONS OF AN INCOME TAX TREATY BETWEEN AUSTRALIA AND A FOREIGN GOVERNMENT ITS USE AND DISCLOSURE MUST BE GOVERNED BY THE ...

4. Mr Cannon replied providing amongst other things details regarding the first three deposits and withdrawals in the HSBC account that are the subject of these proceedings.

5. Mr Yell said that the reply from Mr Cannon was the first time that he became aware of these transactions.

6. He does not know if the account is still open.

7. By his understanding the funds flowing into and out of this account were arranged and carried out by Ms Liu.

**Declaration and Deposition**

1. Yell confirmed that he signed the declaration dated 10/12/07. He says that this declaration was composed by Mr Cannon. He says he did not take enough care in reading the declaration prior to signing it. He did not fully appreciate the ramifications of him signing this document. He does confirm signing it.

2. He says that the information on the declaration is not a correct description of the facts. He refutes that he earned substantial amounts in consultancy fees. He refutes that he had a loan outstanding with Ms Liu prior to him performing the consulting fees. He refutes that he used funds paid to him by Liu to repay a loan back to Ms Liu.

3. Yell stated that he did not recall receiving the order dated 24 January 2008 authorising his deposition.

4. He does however recall the contexts of the order and thinks that it may have been in the contents of an email that he received from Mr Cannon.

5. I asked him about the deposition he declared that he would make in this matter. He said that, subject to his legal advice:

   a) he believes he will not be making a deposition;

   b) if he were to make a deposition it would not be in the terms outlined in the declaration;

   c) if he did make a deposition it would be in terms

      i) he provided some assistance to Ms Liu;

      ii) he has never been paid for that assistance;

      iii) he has never sought to be paid for the assistance due to what he believed to be a "moral obligation" to provide the assistance;

      iv) he did not have a loan with Ms Liu. Funds were invested for Ms Liu. Funds and the investment were in the name of Ms Liu;

3

...ION IS FURNISHED UNDER ... ...IONS OF AN INCOME TAX ...EATY BETWEEN AUSTRALIA AND A ...REIGN GOVERNMENT. ITS USE AND ... THE...

    v) the funds transferred into and out of Mr Yell's HSBC account were undertaken by Ms Liu.

**Other**

1. Mr Yell advised that as at 26 March 2008 he considered himself to be a resident of Singapore for tax purposes as he moved there.

2. They will endeavour to provide copies of correspondence to/ from Mr Cannon. If they are unable to do so they will give reasons as to why.

( )   Ivan Barba

4