CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA 94104
Telephone: (415) 362-6252
Facsimile: (415) 677-9445

Counsel for DIANA HOJSAK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>DIANA HOJSAK<br>a.k.a. Diana Lu<br><br>　　　Defendant.<br>_____ | No. CR-07-0325 PJH<br><br>**DEFENDANT DIANA HOJSAK'S MOTION IN LIMINE TO COMPEL DISCLOSURE OF <u>BRADY</u> MATERIAL** |

　　　This indictment followed a lengthy investigation by the Internal Revenue Service (hereinafter "IRS") and extensive cooperation between the IRS and counsel for YOFC. Tax investigation and prosecution procedures mandate preparation of various documents. Diana Hojsak requests that this Court order the government to disclose those documents, as well as the notes used to prepare those documents, as exculpatory material under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

The Department of Justice Tax Division Criminal Tax Manual summarizes the

process by which criminal prosecutions are instigated within the IRS:

> [u]pon concluding an administrative investigation, a special agent recommending prosecution must prepare a special agent's report (SAR) that details the investigation, its results, and the agent's recommendations. After review within CID, the SAR, together with the exhibits, is reviewed by District Counsel. When prosecution is deemed warranted, District Counsel prepares a criminal reference letter (CRL), that discusses the nature of the crime(s) for which prosecution is recommended, the evidence relied upon to prove it, technical aspects and <u>anticipated difficulties of prosecution</u>, and the prosecution recommendations themselves.

United States Department of Justice Tax Division Criminal Tax Manual, IRS

Review of Administrative Investigations, § 6-4.1113, 1994 Ed. (emphasis added).

The IRS Manual [hereinafter "IRSM"] contains detailed instructions for

investigation and prosecution of tax offenses. Chapter Eight instructs Special Agents in

the preparation of investigative reports [hereinafter "SAR"s]. The IRSM stresses that

SARs are to be fair, accurate, and complete, and to describe all pertinent facts in an

unbiased manner. IRSM, 8.3.1-8.3.1.2. The IRSM specifically directs that "explanations

from the subject and important facts developed by the investigation that point to

weaknesses in the investigation should not be omitted." Id. at 8.3.1.2. An essential "major

section" of a SAR is the "Explanation and Defense of Taxpayer Section." Id. at 8.4.2;

8.4.2.5. "In this part of the report, the special agent shall set forth explanations of the

taxpayer, facts regarding his or her attitude toward the investigation, facts indicating his or

her defense, and rebuttal evidence." Id. at 8.4.2.5 at 2. The other major sections of the

SAR include the Introduction, History of Taxpayer, Evidence of Income, Evidence of

Intent, Evidence Relating to Sentencing Guidelines, and Conclusions and

Recommendations. Id. at 8.4.2.

An SAR is "reviewed extensively within the Internal Revenue Service" by a Group

Manager, Centralized Case Reviewer, Branch Chief, Chief of Criminal Investigation, and

District Counsel. Id. at 12.3.1 p. 2. These reviewers may order changes or further

investigation. Id. at 12.3.1.2 - 12.3.1.5; 12.3.1.5.2. The comments of at least some of

these reviewers are not made part of the prosecution file, but are retained by the IRS. Id. at

10.5.

A supplemental report may be ultimately prepared by the agent to clarify the SAR,

following discussion with the District Counsel and further investigation. Id. at 12.3.1.5.2.

The IRSM specifically recognizes that "District Counsel may have discussed the defenses

raised by the taxpayer with the special agent prior to requesting a supplemental

investigation." Id. at 12.3.4.5.2 p. 4.

If the District Counsel agrees with the SAR, and recommends prosecution, they

prepare a Criminal Reference Letter (hereinafter a "CRL") to forward with the SAR and

any exhibits to the Department of Justice (hereinafter "DOJ"). Id. at 12.3.1.5.1. The CRL

"should contain a thorough analysis of the case, an explanation of the recommended

charges, a discussion of the evidence available to prove the recommended charges, and a

discussion of foreseeable problems and defenses whether raised by defendant or his/her

counsel or determined by analysis of the case file." Id. at 31.4.7 (emphasis added).  The CRL should include "[a] discussion noting taxpayer conferences, defense contentions or reasonably probable defenses, and available rebuttal evidence should be made with appropriate references to exhibits containing such defense and rebuttal evidence. Anticipated motions for suppression of evidence and dismissal of charges should be discussed at this juncture." Id. at 31.4.7.2 ¶ K (emphasis added).

Several additional forms and documents may also be prepared and forwarded to the DOJ and District Counsel, including a transmittal memorandum. Id. at 12.5.  The transmittal memorandum is to include discussion of "[a]ny unusual legal problems." Id. at 12.5.2 (emphasis added).

In the usual case, following the formal conference where a defendant is informed of the results of the investigation[1], the agent and District Counsel Attorney discuss the taxpayer's defenses raised at the conference; the agent may then further investigate those defenses. Id. at 12.2.3.

All of these documents, as well as the notes used in their preparation, may provide exculpatory material, and under Brady v. Maryland, 373 U.S. 83 (1963), the government must disclose these documents to Quintana.

Counsel has seen other administrative prosecution reports prepared by IRS special agents in this district.  These reports detail the charges and evidence against those

---

[1] For unknown reasons, no conference was held in this case.

defendants, and contain the section entitled "Explanations and Defenses of Taxpayers"

mandated by the IRSM, which identifies and details potential problems with the

prosecution. This section is clearly <u>Brady</u> material. SAR's often also contain statements

of the various witnesses who may be called to testify. Those statements should also be

turned over.

In <u>Brady</u>, the Supreme Court held "that the suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution." <u>Id</u>. at 86. This rule applies to both exculpatory and impeachment evidence.

<u>Horton v. Mayle</u>, 408 F.3d 570 (9th Cir. 2005); <u>United States v. Bagley</u>, 473 U.S. 667, 676

(1985); <u>United States v. Cooper</u>, 173 F.3d 1192, 1202 (9th Cir. 1999).

Evidence is material and should be disclosed if "there is a 'reasonable probability'

that the result of the proceeding would [be] different [were it] disclosed to the defense."

<u>United States v. Service Deli, Inc.</u>, 151 F.3d 938, 943 (9th Cir. 1998), <u>citing</u> <u>United States</u>

<u>v. Bagley</u>, 473 U.S. at 682. As the Supreme Court has emphasized:

> <u>Bagley</u>'s touchstone of materiality is a "reasonable
> probability" of a different result, and the adjective is
> important. The question is not whether the defendant
> would more likely than not have received a different
> verdict with the evidence, but whether in its absence
> he received a fair trial, understood as a trial resulting in
> a verdict worthy of confidence. A 'reasonable
> probability' of a different result is accordingly shown
> when the government's evidentiary suppression
> 'undermines confidence in the result of the trial.'

<u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995), <u>quoting</u> <u>United States v. Bagley</u>, 473

U.S. at 678.

"Information which might 'have raised opportunities to attack . . . the thoroughness and even good faith of the investigation . . ." constitutes material, exculpatory evidence." United States v. Howell, 231 F.3d 615, 625 (9th Cir. 2000). Similarly, "under Ninth Circuit law, 'evidence is material if it might have been used to impeach a government witness, because if disclosed and used effectively, it may make the difference between conviction and acquittal.' Evidence can be 'used to impeach' a witness even if the evidence is not itself admissible, even to impeach." Paradis v. Arave, 240 F.3d 1169, 1179 (9th Cir. 2001)(quoting Carriger v. Stewart, 132 F.3d 463, 481 (9th Cir. 1997)).

Under Brady, the government must disclose Agents' reports containing exculpatory or impeachment material. United States v. Cooper, 173 F.3d at 1202; United States v. Zuno-Arce, 44 F.3d 1420, 1425-1426 (9th Cir. 1995).

Several courts have specifically recognized that IRS SARs may contain Brady material and should be disclosed. See United States v. Doerr, 886 F.2d 944, 965-966 (7th Cir. 1989); United States v. Sternstein, 596 F.2d 528 (2nd Cir. 1979).

In Sternstein, in response to defense counsel's general Brady motion, the prosecution allowed him to briefly examine the SAR, but refused to provide a copy. Id. at 528. The Second Circuit remanded the case to the district court to allow defense counsel to more thoroughly examine the report, and also directed the trial court itself to examine the report and to order a new trial if warranted by that examination. Id. at 531. Recognizing the centrality of the SAR to the prosecution, and its potential to provide exculpatory evidence, the court observed "the details and results of the IRS investigation

constituted the critical information contained in the report.  That information was not

independently available to appellant."  Id. at 530, n. 3.  In finding that the prosecution

should have turned over the report, the court emphasized "the critical element in a tax

fraud case . . . is the mental state of the defendant.  Courts have repeatedly recognized that

in such cases the accused as part of his defense is entitled to wide latitude in the

introduction of evidence which tends to show lack of specific intent."  Id. at 529 (citations

and internal quotations omitted).

In Doerr, the district court granted defendant Christofalos' Brady motion and

ordered the government to produce any portion of the SAR which pertained to her.  United

States v. Doerr, 886 F.2d at 965.  Although the district court refused to allow her to

introduce specific evidence of the special agent's recommendation that the investigation be

discontinued, it allowed her to inform the jury that the investigation had been discontinued

and to introduce evidence from that discontinued investigation, which was apparently

contained in the SAR.  Id. at 965.

In Benn v. Lambert, 283 F.3d 1040, 1060 (9th Cir. 2002), the Ninth Circuit

affirmed the district court's grant of a habeas corpus writ, finding that prosecutors'

withholding of a fire inspectors' report was a Brady violation.  That report concluded that a

fire was accidental rather than arson, significantly undermining the prosecution's theory

was that the defendant planned to kill the victims following their joint participation in an

fire insurance scheme.  The Ninth Circuit rejected the state's argument that its failure to

turn over the report was not a Brady violation since it had turned over a later fire

inspection report. The court concluded that, standing alone, the later report was misleading as to the inspector's conclusion. Id. at 1060.

Handwritten notes of investigators, agents, or attorneys which contain exculpatory or impeachment information must also be disclosed under Brady. Paradis v. Arave, 240 F.3d 1169, 1181 (9th Cir. 2001); United States v. Service Deli, Inc., 151 F.3d at 944. In Paradis, the Ninth Circuit upheld the district court's grant of a habeas corpus writ, where the government had withheld a prosecutor's notes of a police detective's report of the opinions of a medical examiner who had performed autopsies on murder victims. Id. at 1173, 1181. The Ninth Circuit emphasized that even if the notes should have been disclosed, even if they wound have been inadmissible due to the multiple layers of hearsay; as the notes would have been "very useful" to the defense in cross-examining the medical examiner, and because the examiner contradicted the notes on the stand, the defense could have called the police detective to testify regarding the examiner's prior inconsistent statements. Id. at 1179-1180.

In United States v. Service Deli, 151 F.3d at 944, the Ninth Circuit vacated the defendant's conviction where the government had failed to produce a government attorney's handwritten notes of her interviews with the government's principal witness. Although the government had provided the defense with a typewritten summary of the interviews, the court compared that summary with the notes and found several discrepancies, omitting information which could have been used to impeach the witness. Id. at 943-944.

The government must disclose exculpatory evidence in the agent's possession without regard to the prosecutors' knowledge of that evidence. The government's Brady obligation "is independent of whether, at the time, the prosecutor knew of the favorable evidence or appreciated its significance." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2000)(citing Kyles v. Whitley, 514 U.S. at 437-8). In Kyles, the Supreme Court reversed a conviction where the police had withheld evidence which would have impeached the credibility of "Beanie", an acquaintance of petitioner who had advised the police that petitioner was the perpetrator, and of where and when they could locate evidence incriminating petitioner. Kyles v. Whitley, 514 U.S. at 454. The Supreme Court stressed that the prosecution was required to disclose the evidence, even though the police had not given it to the prosecution: "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Id. at 437.

Similarly, the Ninth Circuit has emphasized that:

> [e]ven if the prosecutors were not hiding the statement until the defense could no longer make practical use of it, it is the government's, not just the prosecutor's conduct which may give rise to a Brady violation. Prosecutors and investigators must often be tempted, in the service of what they see to be justice and protection of the public from crime, to increase the probability of success by depriving the defense of evidence which might tend, in their view, to confuse and mislead the jury. Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. United States v. Zuno-Arce, 44 F.3d at 1427.

Accordingly, this Court should direct the government to provide the defense with a copy of the SAR; any revisions or reviewers comments to the SAR; any supplemental investigation reports; the CRL; any transmittal memoranda; any notes which were relied on in preparation of those documents, in particular all notes of the agent related to this investigation; and any other documents or notes which contain potential exculpatory or impeachment material.  At the very least, this court must conduct an in camera review of the SAR, notes, and other related documents as described above in order to determine whether they contain exculpatory or impeachment evidence.  United States v. Antonakeas, 255 F.3d 714, 726 (9th Cir. 2000); United States v. Sternstein, 596 F.2d at 531; United States v. Wigoda, 521 F.2d 1221, 1226 (7th Cir. 1975).

Accordingly, we request the Court order the disclosure of the SAR and any other Brady material in this case.

Dated: April 25, 2008                    Respectfully submitted,

                                         /s/ Christopher Cannon
                                         Christopher J. Cannon
                                         Attorney for Diana Hojsak