JOSEPH P. RUSSONIELLO
United States Attorney
BRIAN STRETCH
Chief, Criminal Division
CYNTHIA STIER (DCBN 423256)
Assistant United States Attorney
THOMAS M. NEWMAN (CTSBN 422187)
Assistant United States Attorney
 9th Floor Federal Building
  450 Golden Gate Avenue, Box 36055
  San Francisco, California 94102
  Telephone: (415) 436-7000

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>DIANA LU<br>a/k/a Diana Jing Jing Hojsak,<br>a/k/a Jing Jing Lu,<br>a/k/a Diana Hojsak,<br><br>　　　　Defendant. | Case No. CR-07-0325-PJH<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL |

Comes now the United States of America, by and through its undersigned counsel, and submits this memorandum in opposition to defendant's Motion For Judgment of Acquittal or in the Alternative Motion for New Trial. (Dkt. No. 134). Defendant offer three separate grounds for judgment of acquittal, or in the alternative for a new trial, including: (1) that the Court admitted hearsay evidence contained in invoices from "Yell Consulting;" (2) the failure to give an instruction on reliance of professional advice; and (3) that the Court's Allen charge was coercive. Defendant argues first two grounds warrants a reversal of the conviction, and the latter requires a new trial. Defendant's motion should be denied as none of these claims are factually or legally supported.
*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*                -1-

**I.     THE "YELL INVOICES" ARE NOT INADMISSIBLE HEARSAY**

Defendant premises her initial objection to the Yell invoices in arguing that those documents were not properly authenticated.  This assertion is wrong for several reasons.  First, as the finder of fact, the jury is the ultimate arbiter of whether evidence is authentic. See McCormick et al., McCormick On Evidence § 227 (2d ed. 1972) ("if a prima facie showing is made, the writing or statement comes in, and the ultimate question of authenticity is left to the jury.").  Accordingly, the role of the trial court is to determine, as an initial matter, if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).

Once the proponent of the evidence makes out a *prima facie* showing for authenticity, then the evidence should be submitted to the jurors for consideration of its authenticity, and the burden shifts to the opponent of the evidence to convince them that the evidence is not authentic. See United States v. Caldwell, 776 F.2d 989, 1003 (11th Cir. 1985) ("Rule 901 . . makes the court's determination of authenticity merely a preliminary evaluation and leaves the ultimate decision on genuineness to the jury.").  In this case, the defendant asserted throughout trial Michael Yell performed consulting services for her in accordance with the agreement admitted by defense.  The documents at issue are all dated through the period of that agreement, and the invoices are for payment for services rendered by "Yell Consulting."  In addition, the invoices clearly request payment from the defendant's HSBC bank account, which is identified (correctly) through the account number.  That showing coupled with the defendant's testimony lays a proper foundation for these documents.

Second, these invoices were authenticated by the defendant.  At trial, the following testimony was elicited regarding these invoices:

Q:    Okay.  Who Prepared these invoices?
A:    I have no clue.
Q:    Have you ever seen these invoices before?
A:    I believe I seen some invoices from Michael.
Q:    Okay.  And these invoices actually were provided to the Government, through

|   |   |   |
|---|---|---|
|   |   | defense.  Did you provide these to Mr. Cannon? |
|   | A. | It's possible. |
|   | Q. | Okay.  Did you provide them or did they come from Michael Yell or who provided them? |
|   | A: | They come from Michael Yell.  (Tr. at p. 81:5-19.) |

This question was not vague nor is defendant's response confirming that Yell provided these specific invoices.  Based on that statement alone, the Yell invoices were properly authenticated by defendant and decision on genuineness is left to the jury.  In that regard, defendant had ample opportunity to deny knowledge and familiarity with these documents, which she did.  For that reason, the jury would have been properly left with responsibility for deciding whether the invoices were authentic, but these documents were not admitted.

The next part of defendant's claim is that the contents of these messages were effectively admitted inappropriately during cross-examination.  That claim is also wrong.  Those invoices could have been properly admitted as business records, impeachment evidence, and a statement of a co-conspirator.

**1.    The Yell Records are Admissible**

Contrary to defendant's assertion, the Yell invoices are admissible business records. Business records made and kept in the regular course of business are admissible pursuant to Fed. R. Evid. 803(6) without violating a defendant's right of confrontation.  See United States v. Ray, 930 F.2d 1368, 1371 (9th Cir. 1991) (business records exception to the hearsay rule is a firmly rooted exception). The basic foundational facts are: (1) the record was made at or near the time of the incident recorded based on information from someone with knowledge, and (2) the record was "kept in the course of a regularly conducted business activity." Id. at 1370.

These foundational facts can be established through the testimony or affidavit of the custodian of records *or other qualified witness*. Id. The phrase "other qualified witness" is broadly interpreted to require only that the witness understand the record-keeping system. United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir. 1993).  Further, the witness need not personally record the information nor know who actually did make and keep the

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*                -3-

1  records. United States v. Bland, 961 F.2d 123, 126 (9th Cir. 1992); United States v. Basey,
2  613 F.2d 198, 202 n.1 (9th Cir. 1979). Moreover, the Government need not establish when or by
3  whom the documents were prepared.[1] Arias-Villanueva, 998 F.2d at 1503. In fact, the
4  foundation for the application of Rule 803(6) may be laid, in whole or in part, "by the testimony
5  of a government agent or other person outside the organization whose records are sought to be
6  admitted." United States v. Hathaway, 798 F.2d 902, 906 (6th Cir. 1986). And any challenge to
7  the accuracy or completeness of business records generally affects the weight of the evidence
8  and not its admissibility. La Porta v. United States, 300 F.2d 878, 882 (9th Cir. 1962).
9  Moreover, documents received from third parties that are incorporated into the business
10 records of the recipient also satisfy the business records exception if they were relied upon by the
11 recipient for their accuracy. United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993);
12 Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1342 (Fed. Cir. 1999); see also
13 United States v. Ullrich, 580 F.2d 765, 772 (5th Cir. 1978) (automobile manufacturer's
14 documents kept and relied upon by dealership obviously admissible under Rule 803(b)); United
15 States v. Parker, 749 F.2d 628, (government export documents kept by importer).
16 Here, the defendant confirmed that Yell sent these invoices to her office in China at the
17 close of each calendar year at her request. An inspection of these invoices confirms that each is
18 dated at the end of each calendar year. Defendant further confirmed that her office manager,
19 Una Lu maintained these records and that payments were made in accordance with these
20 invoices. The fact that defendant vacillated between recognizing and being unfamiliar these
21 records is irrelevant since she testified that she actually relied on these invoices in paying Yell
22 the amount stated.
23 At trial the defendant gave testimony that established that these invoices were records

---

[1] "It is not necessary that the person who actually prepared the business record testify, nor that the document be prepared by the business which has custody of it, so long as other circumstantial evidence suggests the trustworthiness of the record." United States v. Hawkins, 905 F.2d 1489, 1494 (11th Cir. 1990) (citing United States v. Parker, 749 F.2d 628, 633 (11th Cir. 1984)); accord United States v. Metallo, 908 F.2d 795, 799 (11th Cir. 1990).

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*                -4-

maintained as part of her business. The notion that Yell is a witness necessary to authenticate these invoices as business records is both wrong and contrary to the law of this circuit. As noted above, any person with knowledge can do so, and the defendant did authenticate these records making them admissible business records despite defendant's assertion.

Along those lines, defendant's assertion that the government is required to identify the author as a prerequisite to admissibility is unfounded. In United States v. Valles-Valencia, 811 F.2d 1232, 1237 (9th Cir. 1987), which is cited by defendant as authority for that position, the Ninth Circuit *actually* held that the ledger was admissible because the entries fell within the dates of the conspiracy. Id. In this case, the invoices identifying the consulting agreement between Yell and Lu, all dated between 1998-2001, and identifying defendant's HSBC account are not comparable to the cryptic entries in a drug ledger. In fact, defendant's comparison of these invoices to the drug ledgers at issue in the above-cited cases is wholly disingenuous. These invoices were not seized or secured by the government, but were in fact provided by defense counsel in support of defendant's motion to depose Yell. After Yell recanted, the defense then recoiled and disassociated from part's of Yell's statements – including these invoices.

### 2. The Cross-Examination Was Proper Impeachment Testimony

As noted above, none of the Yell invoices were actually admitted into evidence in this case. For that reason, most of defendant's contention that hearsay testimony was allowed is baseless. Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). During direct examination, defendant testified at length regarding her alleged business relationship with Michael Yell. This included amounts paid to Yell for consulting services. In a criminal case, the credibility of the accused is always at issue. United States v. Dixon, 547 F.2d 1079 (9th Cir. 1976). Federal Rule of Evidence 607 by its express terms does not limit the manner that a witness may be impeached. Id. In addition, the extent of impeachment is committed to the discretion of the trial court. Lustig v. United States, 555 F.2d 737, 749 (9th Cir. 1977); United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984). Moreover, defendant has no right to give testimony without being subjected to cross-

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*                    -5-

examination on those issues.  Id.

During direct examination, defendant testified at length regarding her alleged business relationship with Michael Yell.  That testimony included specific payments made to Yell in support of the purported consulting agreement.  Under its discretion, this Court properly allowed cross-examination issues related to the direct examination and defendant's truthfulness.  That is particularly true where the questioning related to an element of a charged offense.  In this case, defendant offered uncorroborated testimony that would entitle her to $2 million of deductions, that in her view the jury should facially accept.  That assertion is plainly incorrect as the government is required to prove, *inter alia*, the existence of a deficiency in a tax-evasion case.  United States v. Marashi, 913 F.2d 724 (9th Cir. 1990).  Because the claimed expenses related to an element of that crime in addition to the defendant's untruthfulness, cross-examination on these invoices was entirely proper.  See, e.g., Osborne v. United States, 542 F.2d 1015 (8th Cir. 1976).  That is particularly true where, as here, the defendant committed to paying significant sums to Yell before ATI was even profitable.  Moreover, this questioning is also proper in light of the fact that both Yell and the defendant have altered their stories regarding the creation, truth, and existence of these invoice and whether any monies changed hands.[2]  As noted above, defendant testified it is possible that she gave these invoices to defense counsel who supplied them to the government.

As related to the false return charges, none of these invoices were supplied to or made part of the accountant's work papers.  Defendant signed each of those returns under penalties of perjury, but never claimed any of the Yell expenses as deductions.  For that additional reason ATI's income tax returns are knowingly false, or the invoices are fabricated for the sole purpose of defeating the evasion charges.  In either case, defendant's truthfulness and the false claims made on ATI's tax returns were properly at issue during cross-examination.

### 3.     Co-Conspirator Statements

---

[2] Goodman v. Pennsylvania Turnpike Commission, 293 F.3d 655, 667 (3d Cir. 2002) ("But even if the statements were hearsay offered by way of impeachment as a subterfuge to put into evidence otherwise inadmissible evidence, their admission was harmless.").

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*                -6-

1  Lastly, the invoices, and the statements made therein, demonstrates a conspiracy that
2  includes as participants Defendant Hojsak and Michael Yell. Testimony may include out-of-
3  court statements by a co-conspirator during and in furtherance of the conspiracy. Such
4  statements are not hearsay under Fed. R. Evid. 801(d)(2)(E). An out-of-court declaration of one
5  conspirator may be used against another coconspirator who was not present when the declaration
6  was made. Dutton v. Evans, 400 U.S. 74, 81 (1970). A showing that the declarant is not available
7  to testify is unnecessary. United States v. Paris, 827 F.2d 395, 400-01 (9th Cir. 1987). A jury
8  can consider the truth of a conspirator's out-of-court statement when (1) the declaration was in
9  furtherance of the conspiracy; (2) it was made during the pendency of the conspiracy; and (3)
10 there is independent proof of the existence of the conspiracy and of the connection of the
11 declarant and the defendant to it. United States v. Sears, 663 F.2d 896, 905 (9th Cir. 1981).
12  The order of proof is up to the trial judge's discretion. The court can conditionally admit
13 an out-of-court statement, subject to a motion to strike if subsequent evidence does not connect it
14 to a conspiracy with the defendant. United States v. Testa, 548 F.2d 847, 852 (9th Cir. 1977). Or
15 the court can require a preliminary circumstantial showing of the foundational elements by a
16 preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 175 (1987). In making
17 its preliminary determination, the court may consider the circumstances and substance of the out-
18 of-court statement itself. Id. In determining if a conspiracy exists, relevant areas of inquiry
19 include the nature of the scheme, the identity of the participants, the quality, frequency, and
20 duration of each coconspirator's transactions and the commonality of goals and times. United
21 States v. Torres, 908 F.2d 1417 (9th Cir. 1990). It is not necessary to show that each co-
22 conspirator was aware of all the details of the conspiracy. Blumenthal v. United States, 332 U.S.
23 539, 557 (1947). And a conspiracy need not be charged in the indictment. United States v.
24 Manning, 56 F.3d 1188, 1197 (9th Cir. 1995).
25  Based on the foregoing, Yell and the defendant have unquestionably conspired to engage
26 in criminal conduct. There is simply no doubt that the Yell invoices were fabricated. At least
27 invoice directed payment to defendant's HSBC account, identified by the twelve digit account
28 number, that was even created when the invoiced was supposedly created. Moreover, Yell

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*                -7-

denies creating these invoices in April 2008 despite the fact they were provided to defense counsel in February 2008. Yell also admitted lying in his declaration filed with this Court. Consequently, the outright fabrication of these false invoices, for which no payments were made, are evidence of a conspiracy to commit tax evasion and to defraud the United States (Klein conspiracy).[3] Indeed, defendant readily admits Yell has offered "multiple and inconsistent stories to the prosecution and defense." (Br. at p. 8:24-27). Consequently, the statements made within the invoices are admissible as statements of a co-conspirator Fed. R. Evid. 801(d)(2)(E). Most significantly, for each of these reasons neither a new trial nor a judgment of acquittal is warranted based on this defendant's showing.

## II.   NO GOOD FAITH RELIANCE INSTRUCTION WAS WARRANTED

Defendant contends that she is entitled to a new trial because no instruction was given on reliance on professional advice in violation of Fed. R. Crim. P. 30. Defendant's position is baseless and no new trial should be granted on that basis. An individual defendant should get such an instruction, but only when the case support it. The standard is that: "A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989), cert. denied, 493 U.S. 1032 (1990). A failure to give such instruction is reversible error; but it is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory." Id.; U.S. v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990). Defendant argues, without support, that this case somehow entitled her to that instruction. Defendant is incorrect.

Defendant's factual recitation simply does not support her position. (Br. p. 7). Defendant relies exclusively on testimony regarding electronic communications between herself, Una Lu, and her accountant in the United States. Neither the testimony cited by defendant nor any

---

[3] See United States v. Klein, 247 F.2d 908, 916 (2d Cir. 1957) (proper to prosecute persons who not only try to cheat the government out of money, but also intend to interfere with lawful government function of collecting the revenue under 18 U.S.C. § 371).

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*                -8-

documents offered in evidence contain any *advice* offered by anyone – professional or otherwise. Rather, defendant's testimony alone only suggests that for some unspecified period or reason Una Lu did not send everything to Teng Accountancy. Id.  Through her testimony, defendant apparently blames Una Lu for not living up to some professional standard envisioned by defendant. That failure, which was not articulated but was presumably related to the hidden invoices directing payment to the HSBC account and the account, is a negligence defense but not good faith (reliance or otherwise). United States v. Spies, 317 U.S. 492, 497 (1943) (innocent errors constitute negligence, which is no part of the definition of willfulness).  In that regard, defendant's testimony and the facts as presented would entitle defendant to an instruction that negligent conduct is not sufficient to constitute willfulness.  United States v. Powell, 955 F.2d 1206 (9th Cir. 1991).  However, negligence and willfulness are not synonymous.

Federal trial courts allow a criminal tax defendant to present a "good-faith" defense to the element of willfulness.  A discussion of the line between permissible and impermissible evidence of good faith was offered by the court in United States v. Willie, 941 F.2d 1384, (10th Cir. 1991). The court noted:

> In Cheek, the Supreme Court stated that "a defendant's views about the validity [or unconstitutionality] of the tax statutes are irrelevant to the issue of willfulness [and] need not be heard by the jury . . . [I]t makes no difference whether the claims of invalidity are frivolous or have substance." Id. at 613 . . . [P]roof of the reasonableness of a belief that he should not have a duty only proves the reasonableness of the defendant's disagreement with the existing law and is, therefore, properly excluded as irrelevant.

Id. at 1392-93 (citing Cheek v. United States, 498 U.S. 192 (1991). Cheek, as elucidated in Willie, defines the good faith defense to willfulness in tax cases: a *mistaken* belief by the defendant that the law did not require him or her to file a tax return or pay a tax. See Powell, 955 F.2d 1206, 1212; United States v. Dack, 987 F.2d 1282, 1285 (7th Cir. 1993).

Noticeably absent in this case is any evidence or testimony that defendant had any mistaken belief regarding the tax laws.  Her defense consisted of statements that she hid nothing and blamed others for ATI's misreported income.  Indeed, defendant reiterated throughout trial that her HSBC account was "fully disclosed."  A good faith instruction would only have been

required had defendant admitted for some reason that the HSBC account was not disclosed based on defendant misunderstanding of the tax laws. For example, as argued during opening, defendant did not contend at trial that this income was intentionally excluded because it was, in her belief, taxed only in China or some professional told her to exclude ATI's gross receipts equal to the Michael Yell payments because this results in a "wash." Defendant offered no such testimony and her defense was not "good faith" misunderstanding within the meaning of that term.

Defendant proffered a negligence defense and nothing more. For that reason alone defendant's complaints regarding the belated willfulness definition by the Court is meritless. Lopez, 885 F.2d 1428, 1434 (A defendant is entitled to have the judge instruct the jury on his "defense provided that it is supported by law and has some foundation in the evidence."). There was no evidence supporting a "good faith," as explained above, and so no instruction was ever necessary. Consequently, the Court's definition of "good faith" provided after closing arguments was neither necessary nor could it have any impact on the outcome of the case.

Along those same lines, defendant's good-faith-reliance instruction was also unnecessary. As an initial matter, "A defendant may rebut the Government's proof of willfulness by establishing good faith reliance on a qualified accountant after *full disclosure* of tax-related information." See, e.g., United States v. Bishop, 291 F.3d 1100, 1106-07 (9th Cir. 2002) (citing cases). Defendant fails to meet for several reasons. First, there was evidence of full disclosure to defendant's accountant who testified that he never received information related to her HSBC account. That information, including all invoices paid to ATI, were requested annually in order to prepare the returns but not provided. On the other hand, defendant readily provided those statements to other banks when she was requesting loans to buy property.

Second, there was no testimony that, after full disclosure, any of defendant's "advisors" told her to exclude any income. In fact Teng, who signed ATI's tax returns, testified that the defendant never asked him for any general advice or specific questions about the income excluded here. As related to fact, there is no evidence relied on any advice in excluding, omitting, or evading payment on any tax. Similarly, there is no evidence that anyone but Teng

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*               -10-

was a professional who was qualified to offer tax-related advice in this country.

Moreover, there are additional reasons why this instruction would be anything more than superfluous. Defendant testified that she was directing Una Lu, who only worked at ATI for a brief period. The testimony elicited by defendant also showed that Teng accountancy was given information directly from defendant when Ms. Lu worked there and after. During that entire time, defendant never disclosed her personal HSBC account or the one she stated was opened for ATI. In addition, the defendant never provided a single invoice identifying the HSBC account. However, Teng asked for all accounts annually. That conduct is not negligent nor did defendant act on any "good faith" misunderstanding. Rather, defendant violated the law in hiding the HSBC account and income deposited there.

### III.   THE ALLEN CHARGE WAS NOT COERCIVE

Defendant's assertion that the Allen charge is based on a tortured representation of the facts. Defendant incorrectly asserts that the jury reported that they were deadlocked at nearly 3:00 p.m. At around that time, the jury requested to have a portion of the transcript read back or given to them. After learning that a transcript was not available, the jury was informed a transcript had to be prepared and a read back of defendant's testimony would take about four hours. At that point, the jury stated a read back of the testimony was necessary and they were deadlocked and a non-coercive Allen charge was given. Then the foreman disclosed which portions of the transcript they wanted to hear. The following day, the jury heard a read back of the defendant's entire testimony and returned a verdict hours later.

Based on those facts, the approved Allen charge was not coercive. When a jury is confused the trial court should clear away the confusion with "concrete accuracy" and "specificity." McDowell v. Calderon, 116 F.3d 364, 366 (9th Cir. 1997). The trial court is entitled to exercise its discretion in deciding how best to respond to inquiries made by the jury during its deliberations. See United States v. Nunez, 889 F.2d 1564, 1568 (6th Cir. 1989). "In response to a jury's question after it has begun deliberating, however, a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision." Id.. (quoting United States v. Rowan, 518 F.2d 685,

1  693 (6th Cir. 1975)).  See also United States v. Brown, 276 F.3d 211, 216 (6th Cir. 2002).  When

2  a jury seeks clarification of particular issues, however, the judge should clear away its

3  difficulties "with concrete accuracy." Bollenbach v. United States, 326 U.S. 607, 612-13 (1946).

4  Bollenbach places on the trial judge "a duty to respond to the jury's request with sufficient

5  specificity to clarify the jury's problem." Davis v. Greer, 675 F.2d 141, 145 (7th Cir. 1982).

6  This duty exists among other reasons because "'[i]n a trial by jury ..., the judge is not a

7  mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and

8  of determining questions of law.'" Bollenbach, 326 U.S. at 612  (quoting Quercia v. United

9  States, 289 U.S. 466, 469 (1933)). See also Weeks v. Angelone, 528 U.S. 225 (2000) (explaining

10 that the trial judge's duty to instruct the jury adequately "continues until a verdict is reached and

11 returned. As they work towards a verdict, the jurors must stay in the channel charted for them by

12 state law. To this end, they may need ongoing guidance.").

13 In this case, defendant omits in her brief the fact that the jury asked for additional

14 information – a read back of testimony – and did not simply declare a deadlock.  At that point,

15 the jury's asked for information to which they were entitled under existing law.  After learning

16 that the jury would return the following day, the foreman clarified which portions of the

17 transcript they wanted to hear.  That fact, combined with the fact that a verdict was reached

18 hours after testimony read back indicated that the Allen charge was anything but coercive.

19 United States v. Weaver, 197 F.3d 359 (9th Cir. 1999).  Demonstrating that point, the jury did

20 not deliberate at length after the Allen charge but only for hours after their collective request for

21 information was answered.  For that reason alone, defendant's request for new trial on that basis

22 should be denied as it is inconsistent with the law in this circuit.

### IV. CONCLUSION

For the above reasons, defendant's motion should be denied in all respects.

Respectfully Submitted,

JOSEPH P. RUSSONIELLO

*/s/Thomas M. Newman*
THOMAS M. NEWMAN
Assistant United States Attorney

*United States' Opposition to Motion*
*for Judgment of Acquittal and for New Trial*
*Case No. CR-07-325-PJH*            -12-