CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA 94104
Telephone: 415-362-6252
Facsimile: 415-677-9445

Attorney for Defendant DIANA JING JING HOJSAK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DIANA JING JING HOJSAK.<br><br>Defendant. | ) No. CR 07-0325-PJH<br>)<br>)<br>)<br>) **RESPONSE TO GOVERNMENT'S**<br>) **OPPOSITION TO MEMORANDUM**<br>) **OF POINTS AND AUTHORITIES IN**<br>) **SUPPORT OF MOTION FOR**<br>) **JUDGMENT OF ACQUITTAL OR IN**<br>) **THE ALTERNATIVE MOTION FOR**<br>) **NEW TRIAL**<br>)<br>)<br>)<br>)<br>)<br>) |

# TABLE OF AUTHORITIES

## CASES

Cheek v. United States, 498 U.S. 192 (1991) .................................................................4

People v. Earp, 20 Cal. 4th 826 (1999).........................................................................9

People v. Price, 1 Cal. 4th 324 (1991) ..........................................................................9

People v. Warren, 45 Cal. 3d 471 (1988) .......................................................................9

Spies v. United States, 317 U.S. 492, 63 S. Ct. 364 (1943)..............................................3

United States v. Burt, 410 F.3d 1100 (9th Cir. 2005)......................................................1

United States v. Gilbert, 57 F.3d 709 (9th Cir. 1995)......................................................8

United States v. Gomez-Gallardo, 915 F.2d 553 (9th Cir.1990)............................................8

United States v. Lopez, 885 F.2d 1428 (9th Cir.1989) .....................................................1

United States v. Whitson, 587 F.2d 948 (9th Cir.1978) ....................................................8

United States v. Willie, 941 F.2d 1384 (10th Cir. 1991) ...................................................4

## OTHER AUTHORITIES

Fed. R. Evid. 901(b)..................................................................................................5

# I. INTRODUCTION

The Opposition by the government is based upon assumptions and arguments that are not supported by the record. The government's necessity to rely upon arguments that are not based on the record demonstrates that the facts of this case require this Court to grant a retrial.

## II. THE FAILURE TO GIVE A RELIANCE ON PROFESSIONAL ADVICE INSTRUCTION REQUIRES THIS COURT TO GRANT A NEW TRIAL

The government's argument that Ms. Hojsak was not entitled to good faith and reliance upon professional advice instructions is based upon a one-sided view of the evidence. The test is not whether the Court believes that a defendant is entitled to an acquittal based upon a claim of good faith reliance; "a defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence," United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989), cert. denied, 493 U.S. 1032 (1990); "even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." United States v. Burt, 410 F.3d 1100, 1103 (9th Cir. 2005). As we demonstrated in our opening brief (and repeat below), there was ample evidence to support both a good faith and a reliance upon professional advice instruction here.

The government's Opposition concedes ("defendant's testimony alone" (GB 9)), as it must, that there is evidence to support a reliance upon professional advice instruction, but then argues that its view of the evidence is that Ms. Hojsak only acted negligently,

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 1 of 11

rather than in good faith. From this assumption and "conclusion" the government then argues that no good faith or reliance upon professional advice instruction was required. This argument ignores the law, conceded by the government "A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." GB 8.

As we indicated in our opening brief, and as the government has not even attempted to dispute, Ms. Hojsak testified that all of the books and records were kept in Shenzhen "because this is the first business I'm running. I have no clue how to manage those records, so I hire people taking care of those records." RT 40.

Specifically Una Lu, an accountant with a "Western Qualifications Certificate," was hired to keep the books and records (RT 41) and Ms. Hojsak hid nothing from Ms. Lu. RT 42, 54, 57.

Ms. Lu and Teng Accountancy were in frequent direct contact (RT 54) and Ms. Hojsak "was always asking Una, 'Make sure that you talk to Yifan Zhang,' and if they have any problems they can ask Una before the [tax] deadlines." RT 55. "Because if she has any accounting question, I wouldn't be able to answer her. Because Una prepared; Una has accounting knowledge. For me to answer those questions simply is meaningless for her." RT 57.

Ms. Hojsak told Una to send everything to Teng Accountancy (RT 59) and never tried to hide anything from Yifan Zhang, Teng Accountancy (RT 62, 70, 72, 74) or Chester Hurtado. RT 75. She gave them all the information she had so that they would get it right.

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 2 of 11

She hid nothing and relied upon Una and Teng Accountancy to get her tax returns right. RT 75. This testimony demonstrates full disclosure of tax information and reliance upon the assistance of others to get her taxes right.

The government attempts to highlight several problems with Ms. Hojsak's good faith/reliance defense and argues several facts that it claims rebut Ms. Hojsak's claim of good faith reliance. As indicated above, however, the question is not whether this Court would accept Ms. Hojsak's argument of good faith reliance in a court trial. The issue is whether Ms. Hojsak was entitled to have her counsel make that argument to the jury after the Court instructed the jury regarding the proper legal framework to evaluate that argument.[1] That reliance upon professional advice instructions was never given and the good faith instruction was given too late. Because Ms. Hojsak is entitled to an instruction that set out her theory of her defense, and those instructions were not given in the initial instructions, this Court should grant a new trial.

---

[1] It is curious that the government makes the same type of fact-based argument here that was rejected in Spies.

> In this case there are several items of evidence apart from the default in filing the return and paying the tax which the Government claims will support an inference of willful attempt to evade or defeat the tax. These go to establish that petitioner insisted that certain income be paid to him in cash, transferred it to his own bank by armored car, deposited it, not in his own name but in the names of others of his family, and kept inadequate and misleading records. Petitioner claims other motives animated him in these matters. We intimate no opinion. Such inferences are for the jury. Spies v. United States, 317 U.S. 492, 499-500, 63 S.Ct. 364, 368 (1943)

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

The government's has also attempted to narrow the definition of good faith and to make good faith into an affirmative defense which requires the defendant to affirmatively shoulder the burden of proof to demonstrate that that she acted in good faith out of a mistaken belief in the law.  The government tries to argue that there is a difference between ignorance of the obligation or negligence (defendant proffered a negligence defense and nothing more (GB 10)) and good faith.  There is no difference.  The government must shoulder the burden to prove that a defendant did not act in good faith.  Evidence that a defendant told his or her accountants about everything and relied upon those accountants' advice is evidence of good faith and reliance and Ms. Hojsak was entitled to instruction in that subject.

The desperate nature of the government's argument is demonstrated by its reliance on an out of Circuit case where, over a strong dissent, two judges found that a pro per defendant had failed to make an adequate record as to why his evidence of good faith should have been admitted.  United States v. Willie, 941 F. 2d 1384 (10th Cir. 1991).  The government cites that case for a proposition it does not support: "Cheek, as elucidated in Willie, defines the good faith defense to willfulness in tax cases: a *mistaken* belief by the defendant that the law did not require him or her to file a tax return or pay a tax." GB 9.  Not even Willie goes as far as the government would like.  In Willie, the court specifically recognized that:

> "Willfulness" is defined as the "voluntary, intentional violation
>
> of a *known legal duty.*" Cheek v. United States, 111 S.Ct. at
>
> 610 (emphasis added). To be a relevant defense to willfulness,

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 4 of 11

then, Willie, because of his belief or misunderstanding, must

not have known he had a legal duty. Id. at 611 (defendant must

be "ignorant of his duty"). United States v. Willie, 941 F.2d

1384, 1392 (10th Cir. 1991).

Ms. Hojsak testified that she told her accountants everything and relied upon them to

get things right. She was entitled to an instruction on good faith and reliance upon

professional assistance.

## III. THE ADMISSION OF HEARSAY FROM THE INVOICES REQUIRES THIS COURT TO GRANT A NEW TRIAL

### A. The Invoices were not Authenticated

Due process, the confrontation clause, and the hearsay rule make the admission of

hearsay testimony regarding the content of invoices given to the government and obtained

by counsel from Michael Yell improper.

Despite the government's claim, Ms. Hojsak did not authenticate the invoices which

the government had her read to the jury. There simply was no testimony that the invoices

were what the government claimed them to be. See Fed. R. Evid. 901(b). Ms. Hojsak

testified that she had "seen some invoices from Michael" (RT 81), but "I just don't feel

this invoice, I have ever seen before." RT 87. "I don't know. Because I never seen these

invoice before." RT 115. She was asked: "Okay. And those invoices are different than

these invoices?" And she replied: "It looks strange to me." Again she was asked: "Are

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 5 of 11

they different from these invoices?" Again she responded: "I think so." RT 115. "It doesn't look like the invoice we got before." RT 121.

Ms. Hojsak clearly denied ever seeing the invoices before. Any claim that she somehow authenticated those invoices is belied by the transcript.

**B. The Invoices were not Admissible: The Government Failed to Lay a Foundation for their Admission**

The government relies upon a pre-Crawford case to claim that the admission of the invoices was appropriate. This argument again is undermined by the record. As the government admits its order to lay the foundation of the introduction of a business record, a witness must show: (1) "the record was made at or near the time of the incident recorded based on information from someone with knowledge," and (2) the record was "kept in the course of a regularly conducted business activity." GB 3. Again, despite the government's argument, there is no evidence of either foundational requirement.

The government argues: "Here, the defendant confirmed that Yell sent *these* invoices to her office in China at the close of each calendar year at her request." GB 4 (emphasis added). In fact, as indicated above, Ms. Hojsak testified that "I never seen these invoices before." RT 115. "It doesn't look like I remember the format." RT 116.

The government also claims, without any citation to the record, that "she testified that she actually relied on these invoices in paying Yell the amount stated."[2] GB 5. There simply is no testimony that Ms. Hojsak relied upon the government's invoices.

---

[2] Even in its Opposition, the government commits the same error it made at trial; it attempts to bootstrap its admissibility by relying on the contents of the unauthenticated, unidentified hearsay invoices to support its

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL CR-07-0325-PJH

Page 6 of 11

Finally, the government also claims that: "At trial the defendant gave testimony that established that these invoices were records maintained as part of her business." GB 5-6. In fact, as indicated above, there is no testimony that *these* invoices were maintained as part of her business records.

There was no testimony that the invoices were authentic. There is no testimony on who created them, when they were created, and how they were created. There was no testimony on how they were stored or how they were kept. There is simply no support for their admission and asking Ms. Hojsak repeated questions about their specific content violated Ms. Hojsak's right to confront and cross-examine the witnesses against her.

## C. The Invoices were not Coconspirator Statements

The government's claim that the invoices are coconspirator statements is simply frivolous. First, as indicated above, there has been no showing why the invoices were created, when the invoices were created, or who the invoices were created by. There is simply nothing to support the government's claims that the statements were coconspirator statements.

## IV. THE QUESTIONING ABOUT THE INVOICES WAS NOT PROPER IMPEACHMENT; IT WAS SIMPLE PROSECUTORIAL MISCONDUCT

Not only was the hearsay from the invoices inadmissible, the questioning of Ms. Hojsak about the contents of inadmissible invoices was improper. The government's

argument; "An inspection of these invoices confirms that each is dated at the end of each calendar year." GB 5.

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL CR-07-0325-PJH

Page 7 of 11

argument, just like the government's trial questioning, assumes facts not in evidence.
There is no admissible evidence of the contents of the invoices. At trial, the government
tried to justify its question to Ms. Hojsak accusing her of fabricating the invoices, with a
claimed inference that problems with the invoices made it possible that she had fabricated
the invoice. The problem with this argument is that there is no admissible evidence of the
contents of the invoices and that the government has now switched its position. The
government is no longer claiming that Ms. Hojsak fabricated the invoices. It is now
claiming that the invoices are admissible as coconspirator statements of Michael Yell. GB
6-7. The bottom line is that there is no evidence that indicates who created the invoices,
why they were created, or how they were used. It was simple prosecutorial misconduct to
attempt to get the contents of those invoices before the jury. As we indicated in our
opening brief, "the government must not knowingly elicit testimony from a witness in
order to impeach him with otherwise inadmissible testimony." United States v. Gilbert, 57
F.3d 709 (9th Cir. 1995) citing United States v. Gomez-Gallardo, 915 F.2d 553, 555 (9th
Cir.1990) (quoting United States v. Whitson, 587 F.2d 948, 952-53 (9th Cir.1978)).
Impeachment is improper when employed as a guise to present substantive evidence to the
jury that would be otherwise inadmissible. Id. A determination must be made as to
whether the government examined the witness for the primary purpose of placing before
the jury substantive evidence which is otherwise inadmissible. Id. There was no other
reason to cross-examine Ms. Hojsak about the hearsay contents of the inadmissible
invoices.

In <u>People v. Earp</u>, 20 Cal. 4th 826, 859-860 (1999), the California Supreme Court noted that a prosecutor commits misconduct by asking "a witness a question that implies a fact harmful to a defendant unless the prosecutor has reasonable grounds to anticipate an answer confirming the implied fact or is prepared to prove the fact by other means." (citing <u>People v. Price</u>, 1 Cal. 4th 324, 447 (1991)).  For a prosecutor's question implying facts harmful to the defendant to come within this form of misconduct, however, the question must put before the jury information that falls outside the evidence and that, *but for the improper question*, the jury would not have otherwise heard (citing <u>People v. Warren</u> (1988) 45 Cal. 3d 471, 481 [247 Cal.Rptr. 172, 754 P.2d 218] [describing the gist of the misconduct as implying in the question "facts [the prosecutor] could not prove"].) Moreover, if "the prosecutor is not asked to justify the question, a reviewing court is rarely able to determine whether this form of misconduct has occurred." <u>People v. Earp</u>, 20 Cal. 4th 826, 859-860 (1999).

Here, the series of questions was objected to on multiple occasions.  Not only has the prosecution been unable to prove the invoices are authentic, the prosecution has presented inconsistent theories about why the invoices are admissible.  The prosecution simply can not prove the contents of the invoices or it would not have asked about them.

That cross-examination requires a reversal of this conviction.

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 9 of 11

## V. THE ALLEN INSTRUCTION WAS COERCIVE UNDER THE FACTS OF THIS CASE AND INDICATES THE COURT SHOULD GRANT A NEW TRIAL

The government claims the <u>Allen</u> instruction was not coercive and that the defense has presented a "tortured representation of the facts." GB 14.

The facts are clear: the jury twice informed the Court they were deadlocked and in spite of those declarations were not allowed to go home but were ordered to return the next day. The timing of the second declaration of deadlock and the timing of the verdict are almost identical. The jury knew that they had declared themselves deadlocked at the end of the prior day, but that they were ordered to return anyway and keep trying. After another full day of deliberations, the jurors were faced with a decision to report they were deadlocked again and return again, or to report a verdict and end their deliberations. Some jurors, apparently, gave in and agreed to a verdict, rather than require their fellow jurors to return for another day. This was not a case where the situation encouraged each individual juror to remain true to their beliefs in the hope of obtaining a unanimous verdict. This was a situation where the jurors unanimously expressed their desire to end the deliberations and, after another full day, that unanimity of expression that they wanted to end deliberations led to the end of deliberations and a verdict that contradicted their earlier reports and the observations of counsel and the Court that they were unlikely to agree.

## VI. CONCLUSION

This was a close case as shown by the jury's twin statements that it was deadlocked and the experienced Court's observations that it doubted a verdict would be reached. The

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 10 of 11

government had to prove that a woman who grew up in China, had no experience with United States tax laws, was engaged in a business that took place entirely in China and from which taxes were withheld prior to any payments, and relied upon professionals in both China and the United States, somehow both knew of her United States tax obligations and willfully avoided them.  The government in effect acknowledged the difficulty of proving this case with admissible evidence by resorting to clearly inadmissible evidence in an attempt to undermine Ms. Hojsak's testimony.

The government's excesses in cross-examination continue in its attempt to stretch the law to justify that cross-examination, and its attempt to narrow the definition of good faith and put the burden to affirmatively prove good faith on the defendant rather than shoulder the burden of disproving a claim of good faith.  This cross-examination of Ms. Hojsak was a violation of her due process right to a fair trial and her right to confront and cross-examine the witnesses against her.  Her due process right to a fair trial was additionally undermined by a failure to instruct on reliance of counsel and good faith. Given these facts, it is impossible to conclude that the tired jury was not affected by the inappropriate cross-examination, the lack of a good faith reliance upon professional advice instruction, and the Allen charge.  Accordingly, this Court should set aside the jury verdict.

DATED: June 25, 2008                         Respectfully submitted,


_____/s/_____
Christopher Cannon

RESPONSE TO GOVERNMENT'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 11 of 11