CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA 94104
Telephone: 415-362-6252
Facsimile: 415-677-9445

Attorney for Defendant DIANA JING JING HOJSAK,

a/k/a JING JING LU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br><br>Plaintiff,<br><br>vs.<br><br>DIANA JING JING HOJSAK,<br><br>a/k/a JING JING LU,<br><br><br>Defendant. | No. CR 07-0325-PJH<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL** |

## I.  INTRODUCTION

In this case, three separate significant errors rendered this trial fundamentally

unfair.  First, the Court declined to give an instruction on reliance upon professional

advice, and initially even refused to define good faith for the jury.  Second, the heart of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 1 of 21

government's cross-examination was based upon inadmissible hearsay from invoices which the government improperly used to undermine Ms. Hojsak's testimony.  Third, despite observing that the jury would be unlikely to come to a decision, the Court gave an <u>Allen</u> charge, and forced the jury to return for another day of deliberations after it had twice declared itself deadlocked.  Any of these issues by itself would support the grant of a new trial. Together, they demand it.

## II.    THE STANDARD FOR A NEW TRIAL

Rule 29 of the Rules of Criminal Procedure allows a defendant to move for a judgment of acquittal where "the evidence is insufficient to sustain a conviction," while Rule 33 recognizes a district court's broad discretionary powers to grant a motion for a new trial "if the interests of justice so require."  See <u>United States v. McGuire</u>, 423 F.2d 1216 (9th Cir. 1970) ("A motion for a new trial lies entirely within the discretion of the trial judge.")

In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant.  <u>United States v. Frederick</u>, 78 F.3d 1370 (9th Cir. 1996); <u>United States v. Green</u>, 648 F.2d 587 (9th Cir. 1981).  "Where, as here, there are a number of errors at trial, a balkanized, issue-by-issue harmless error review" is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant."  <u>Frederick</u>, 78 F.3d at 1381, <u>citing</u> <u>United States v. Wallace</u>, 848 F.2d 1464, 1476 (9th Cir. 1988).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 2 of 21

In this case, each of the errors discussed below is sufficient in and of itself to require this Court to grant a new trial. When these errors are viewed together the combined effect demonstrates that the trial and verdict in this case did not comport with due process. Accordingly, the defendant, Diana Hojsak, moves for a judgment of acquittal, or in the alternative, for a new trial pursuant to Rule 33.

## III. THE FAILURE TO GIVE A RELIANCE ON PROFESSIONAL ADVICE INSTRUCTION REQUIRES THIS COURT TO GRANT A NEW TRIAL

As the Ninth Circuit has stated on multiple occasions: "It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case. Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 1999).

A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence. United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989), cert. denied, 493 U.S. 1032 (1990), "even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." United States v. Burt, 410 F.3d 1100, 1103 (9th Cir. 2005). A failure to give such instruction is reversible error United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990) and denies the defendant effective assistance of counsel by limiting his ability to appropriately argue the law to the facts. See Conde at 739. Although the Court is not required to accept the precise language offered by the defendant, if the instructions as a whole, do not adequately cover that defense theory, reversal is required. Id.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 3 of 21

1  "Failure to instruct on the defense theory of the case is reversible error if the theory

2  is legally sound and evidence in the case makes it applicable." Beardslee v. Woodford, 358

3  F.3d 560, 577 (9th Cir.2004) (citation omitted).  However, to obtain relief, "[Byrd] must

4
5  show that the alleged instructional error had substantial and injurious effect or influence in

6  determining the jury's verdict." Clark v. Brown, 450 F.3d 898, 905 (9th Cir.2006), as

7  amended (citations and internal quotation marks omitted); see also Beardslee, 358 F.3d at

8
9  578.  A "substantial and injurious effect" means a "reasonable probability" that the jury

10  would have arrived at a different verdict had the instruction been given.  Clark, 450 F.3d at

11  916; Byrd v. Lewis, 510 F.3d 1045, 1049 (9th Cir. 2007).

12
13      When considering a claim of instructional error, "the proper inquiry is not whether

14  the instruction 'could have' been applied in an unconstitutional matter, but whether there is

15  a reasonable likelihood that the jury *did* so apply it."  Victor v. Nebraska, 511 U.S. 1, 6

16
17  (1994) (emphasis in the original).  Indeed, "[the] challenged instruction must be considered

18  in light of the full set of jury instructions and the trial record as a whole."  Gibson v. Oritz,

19  387 F.3d 812, 821 (citation omitted).  See also Victor, 511 U.S. at 5; and Byrd v. Lewis,

20
21  510 F.3d 1045, 1050 (9th Cir. 2007).

22      In Conde v. Henry, 198 F.3d 234 (9th Cir. 1999) the Ninth Circuit, on habeas,

23  reversed a conviction where the state court had failed to give a requested defense

24  instruction.  Conde had two separate, but inconsistent theories of defense, and argued that

25
26  he was entitled to instruction supporting both of his inconsistent theories.  In defending the

27  habeas petition, the state argued that Conde had one consistent theory that he was innocent

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN
THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 4 of 21

of the crimes charged.  As in this case, the defendant was charged with a crime, in that case robbery, which required a specific intent, in that case, to rob.  The Ninth Circuit ruled that the conviction had to be set aside, because the trial court instructions did not cover the theory of defense.  Although in <u>Conde</u>, the court specifically limited the defense closing argument, the Ninth Circuit noted that nevertheless, defense counsel there argued that his client lacked the required intent.

The result in this case was similar.  As a result of the Court's failure to give the requested instruction regarding reliance upon professional advice, counsel's argument was limited to arguing the government had failed to prove a lack of good faith, and in his closing argument was unable to point to either a specific instruction regarding reliance upon professional advice or the definition of good faith that would be given by the Court in framing the appropriate standards of proof and analysis for the jury.

Accordingly, while counsel is grateful that, at the jury's request, the Court ultimately defined good faith, at the time of argument, counsel was unable to refer to a specific definition of good faith that the Court would give to the jury in an attempt to tie his argument to Court's instructions.  Moreover, in this case, that inability to tie a good faith argument to a reliance-upon-professional-advice instruction was particularly damaging, because counsel specifically asked the jury to listen to the Court's instructions as the final decision on the standard of proof and the legal framework to apply to the facts.

Unfortunately, the correct instructions on good faith were not given until after the deliberations had begun, and by then it was too late.  The opportunity to argue and refer to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 5 of 21

the Court's instructions on reliance upon professional advice and good faith had been lost. The tired jury wanted to go home, and did, after the learning that it could not go home without arriving at a verdict.  See Allen charge argument at pages 17-19.

Similarly, in United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990), the defendant requested an instruction on reliance on government authority.  Because that instruction was not given, the Ninth Circuit reversed.

In a pre-Cheek case, United States v. Dorotich,  900 F.2d 192, 194 (9th Cir. 1990), the Ninth Circuit recognized that while "a number of circuits have held in tax fraud cases that it is reversible error to refuse to give an instruction on good faith reliance on expert advice where some evidence exists to support such a defense, citing United States v. Duncan, 850 F.2d 1104, 1117-18 (6th Cir. 1988); United States v. Mitchell, 495 F.2d 285, 287-88 (4th Cir. 1974); United States v. Platt, 435 F.2d 789, 792 (2nd Cir. 1970); Bursten v. United States, 395 F.2d 976, 981-82 (5th Cir. 1968); United States v. Phillips, 217 F.2d 435, 440-41 (7th Cir. 1954); it went on to state that United States v. Solomon, 825 F.2d 1292, 1297 (9th Cir. 1987), however, "precludes us from adopting the reasoning of these decisions." United States v. Dorotich, 900 F.2d 192, 194 (9th Cir. 1990).  We would submit: One, that Solomon has been undermined by Cheek, which clearly recognizes that a defendant is entitled to rely upon a defense of good faith, and that the Ninth Circuit should revisit Solomon, in light of Cheek and the split among the Circuits.  Second, however, even if Solomon is still good law, while it may not be reversible per se to fail to give a reliance upon professional advice instruction, coupled with a failure to initially define

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 6 of 21

good faith under the facts of this case, the failure to give the reliance upon professional advice instruction requires the verdict to be set aside.

When the Court declined to give a reliance-on-professional-advice instruction, without benefit of a transcript, it inaccurately stated that the defense had not presented sufficient evidence of reliance upon professional advice.  Fortunately, a transcript now exists of Ms. Hojsak's testimony and that transcript demonstrates that Ms. Hojsak was clearly entitled to the requested instruction.

Ms. Hojsak testified all of the books and records were kept in Shenzhen "Because this is the first business I'm running.  I have no clue how to manage those records, so I hire people taking care of those records."  RT 40.

Specifically Una Lu, an accountant with a "Western Qualifications Certificate," was hired to keep the books and records (RT 41) and Ms. Hojsak hid nothing from Ms. Lu.  RT 42, 54, 57.

Ms. Lu and Teng Accountancy were in frequent direct contact (RT 54) and Ms. Hojsak "was always asking Una, "make sure that you talk to Yifan Zhang," and "if they have any problems they can ask Una before the [tax] deadlines." RT 55.  "Because if she has any accounting question, I wouldn't be able to answer her.  Because Una prepared; Una has accounting knowledge.  For me to answer those questions simply is meaningless for her."  RT 57.

Ms. Hojsak told Una to send everything to Teng Accountancy (RT 59) and never tried to hide anything from Yifan Zhang, Teng Accountancy (RT 62,70,72,74) or Chester

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Hurtado. RT 75.  She gave them all the information she had, so they would get it right. She hid nothing and relied upon Una and Teng Accountancy to get her tax returns right. RT 75.

The transcript makes it clear that Ms. Hojsak was entitled to an instruction regarding reliance upon professional advice.  The only remaining question is whether the refusal to give that instruction requires this verdict be set aside.

In this case, the verdict must be set aside, because the Court's initial instructions not only failed to include a reliance-upon-professional-advice instruction, they did not include a good faith instruction.  Accordingly, the original instructions to the jury failed to adequately present the defense theory of the case and require reversal of this conviction.

## IV.    THE ADMISSION OF HEARSAY FROM THE INVOICES REQUIRES THIS COURT TO GRANT A NEW TRIAL

Due process, the confrontation clause, and the hearsay rule make the admission of hearsay testimony regarding the content of invoices given to the government and obtained by counsel from Michael Yell improper.

"It is the duty of the trial court, however, to determine in the first instance, whether a proper foundation exists for the admission of evidence under the rules of evidence and the federal constitution."  United States v. Ordonez, 737 F.2d 793, 811 (9th Cir. 1984). There was simply no foundation for the presentation of these invoices.  They were given to the government by defense counsel and obtained from Michael Yell, a man who has given multiple and inconsistent stories to the prosecution and the defense in this case.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

In both United States v. Ordonez, 737 F.2d 793 (9th Cir. 1984) and United States v. Mouzin, 785 F.2d 682 (9th Cir. 1986), applying the plain error standard, the Ninth Circuit reversed convictions where the prosecution failed to lay an adequate foundation for the introduction of hearsay evidence.  In both cases, the government introduced drug ledgers, without establishing an adequate foundation that the drug ledgers were in fact drug ledgers.  As in this case, there was simply no foundation for the records.  Again, in Wigglesworth v. Oregon, 49 F.3d 578 (9th Cir. 1995), the Ninth Circuit reversed a state conviction on habeas where the government had introduced a lab report without proper identification and authentication testimony.  The Wigglesworth Court held that introduction of the lab report violated due process by reducing the state's burden to prove each element beyond a reasonable doubt.  See In re Winship, 397 U.S. 358 (1970).

Invoices constitute inadmissible hearsay under Federal Rule of Evidence 801(c) and cannot be admitted into evidence unless the author of the entries has been identified.  See United States v. Valles-Valencia, 811 F.2d 1232, 1237 (9th Cir. 1983) (citing United States v. Ordonez, 722 F.2d 530, 535-336 (9th. Cir. 1984)) ("[E]ntries in a ledger constitute inadmissible hearsay when the government cannot identify the person(s) who made the notations.").  This is because "the government's failure to identify the declarant or indicate the basis of his knowledge vitiate[s] the foundation required to establish the statement's reliability."  Id.  See also United States v. Mouzin, 785 F.2d 682, 692 (9th Cir. 1986)(holding that admission of an unascribed ledger was error, reaffirming Ordonez concluding that the admission of an unascribed ledger violated the defendant's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 9 of 21

confrontation rights where the government failed to lay a foundation for the admission of the ledger during the trial by identifying the author of the ledger).

In <u>Ordonez</u>, the defendants were charged with possession of cocaine with the intent to distribute.  As in this case, important evidence against the defendant were records for whom no author was identified at trial.  <u>Id</u>.  The government presented the records to the jury through an expert who opined that "the ledgers were business records made in the regular course of business, which reflected daily cocaine transactions including deliveries made to numerous individuals."  <u>Id</u>. at 533.  On appeal, the Ninth Circuit reversed the conviction after concluding that the ledgers were inadmissible hearsay because the government did not present evidence establishing the author of the ledgers. <u>Id</u>. at 535-37.

Similarly in <u>United States v. Taylor</u>, 471 F.3d 832 (2006), the Seventh Circuit held that the admission of hearsay testimony regarding the number of marijuana plants seized was plain error and reversed the defendant's sentence based upon a jury finding that there were more than 1000 marijuana plants.  In <u>Taylor</u>, the hearsay was introduced, by having one agent testify regarding counts performed by another agent.  There was no real dispute as to the accuracy of the count.  Here, there is a real question as to the accuracy of the invoices and when the government had a chance to ask Yell about them, it declined to take advantage of the opportunity.  See page 12-13.  Instead, the government introduced the text of the invoices in hope of creating a straw man it could later knock down.

In <u>United States v Bruno</u>, 383 F.3d 65, 77 (2d Cir. 2004) the Second Circuit held that the admission of hearsay upon which a verdict depended was plain error and entitled

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 10 of 21

the defendants to a new trial.  While the hearsay in <u>Bruno</u> was a plea allocution and another witness' grand jury testimony, the differences in the nature of the hearsay introduced here, makes the questioning regarding the text of the invoices even more egregious.  The statements in <u>Bruno</u> both occurred in formal proceedings, under the supervision of the Court.  Nevertheless, the conviction was reversed.  There is simply no record of how the hearsay invoices here, which were the heart of the government's cross examination of Ms. Hojsak, were created.  Accordingly, the questioning regarding those invoices violated the Confrontation Clause of the Sixth Amendment.

As the Ninth Circuit stated in <u>United States v. Chu Kong Yin</u>, 935 F.2d 990 (9th Cir. 1991):

> Where there is a reasonable possibility that the admission of evidence in violation of the Confrontation Clause might have contributed to a conviction, the government has the burden of persuading an appellate court beyond a reasonable doubt that such error was harmless.

<u>Chu Kong Yin</u>, 935 F.2d at 1001 (internal citations omitted).

In this case, hearsay invoices were the heart of the government's cross-examination of Ms. Hojsak.  The government's cross-examination of Ms. Hojsak consumes sixty-one pages, see RT 76-137.  Forty-two of those pages, RT 80-122, are centered on the invoices. The jury focused on Ms. Hojsak's testimony and that focus increased the impact of the inadmissible hearsay through repetition.  Just as the Court struck other inadmissible questions and answers from the read back, it could have prevented the hearsay from being

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN
THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

read again.  There was no reason to allow this hearsay to be read again.  It should not have been admitted in the first place.  That hearsay undermined Ms. Hojsak's testimony and is one of the factors that led to the conviction in this case.  The admission of that hearsay requires this Court to grant a new trial.

The government used the hearsay information from the invoices to create the implication that it was improbable that Yell was paid as described by the invoices; and that the invoices were created by Ms. Hojsak.  The problem with this theory is that it is entirely speculative. There was no evidence to support either implication, and the government possessed other evidence tending to show that invoices were, in fact created by Yell.

The evidence regarding the creation of the invoices came from two sources, the defense and Michael Yell himself.  Following the Court's order granting the deposition of Mr. Yell. Counsel for the defense contacted Mr. Yell, obtained the invoices from him and turned them over to the government.  See government's proposed Exhibit 204 counsel's transmittal letter.  The second source is the Australian Interview of Mr. Yell.  Unlike the defense, which had no power to compel Mr. Yell to appear and testify, the government was able to avail itself of the United States/Australia Tax Treaty, and obtained an interview from Mr. Yell through the Australian Tax Office in Sidney, Australia.  In that interview, on April 11, 2008, Yell was shown and authenticated a copy of the consulting agreement in evidence as Exhibit A 95.  He also was shown and authenticated a copy of the declaration he provided to the Court.  (Excerpts from the Yell interview which was provided to the Court during trial are attached to this motion as Exhibit A.)   Yell also

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

confirmed that he owed Ms. Hojsak money, although he termed it a moral obligation, and a fair reading of his statement indicates that amount was somewhere between one and two million dollars.  Exhibit A p9, p13, p14.  Although Yell initially denied giving Ms. Hojsak invoices for his consulting services, he later admitted creating documents to put a dollar value on his services.  The questioner referred to those documents as invoices and Yell admitted preparing them as Word documents.  Yell also admitted providing documents to defense counsel.  Significantly, however, at least at the time of his recorded statement[1], he was not shown the invoices the government sought to ask Ms. Hojsak about, even though the government had received those invoices months before the interview in Australia.

Nevertheless, the government sought to use the unauthenticated hearsay text of the invoices to undermine Ms. Hojsak's credibility.  This undermining occurred twice.  First when the testimony originally occurred, and a second time when the hearsay was reread, again over objection, to the jury.

The government very effectively used the text of the invoices to cross-examine Ms. Hojsak.  "[T]he total number of hours that he worked during that time doing consulting work was 1458, if you add those hours together," RT 87 "And that was all the while he was a general manager of Fujitsu…" Id.   The government then repeated this questioning at pages ninety-one and ninety-two.  "And according to this invoice, Mr. Yell spent 510,

---

[1] The close cooperation between the government and the Australian Tax Authority is demonstrated not only by interview of Yell and the exchange of documents, but also by the presence at trial, as a surprise rebuttal witness, of same ATO agent Ivan Barba, who had interrogated Yell.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

hours. Plus 465 hours…Plus 470 hours for a total of 1,445, doing consulting work for you during 1999." RT 91, 92.

"According to that invoice, Government Exhibit 207, it's been marked as Government Exhibit 207, Yell earned $557,228 during that period of time January to December of 1999.  Is that correct?"  RT 93.  And that was when he was a general manager of Fujitsu?"  Id.

The government also used a reference in the text of the invoices to "Lu" to support its argument that the consulting agreement was between Ms. Hojsak and Yell, not between ATI and Yell.  RT 94.

The government additionally used the dates in the invoices, to support a claim of fabrication because the "[t]he invoice purports to be an invoice from Yell consulting, dated October 1, 1999" (RT 97) "and the invoice directs that $553,461 be deposited into the Jing Jing Lu HSBC Account No. 025578345833" and that account was not even opened at that time. See Ex. 115 HSBC Account Opening Form.

During the second day of testimony, the government again read the invoices to the jury and quoted their somewhat stilted language, in support of an implication that the language of the invoices indicated that they were created by Lu, not by Yell.  "Advising you on YOFC problems analysis" (RT 116); "advised Lu to negotiate the agreement to start new relationship with YOFC" (RT 116); "advising and intensively coaching Lu to deal destructive cooperation business practices with YOFC" (RT 117); "coached Lu to deal destructive cooperation business practice with YOFC" (RT 117); "advised Lu to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 14 of 21

engage in legal proceedings to resolve the problem of breaching contract" (RT 118); "also advised and intensively coaching Lu to deal destructive coper—cooperation business practices with YOFC." RT 119. The government also asked Ms. Hojsak what she found strange about the text of the invoices. RT 119.

The government's cross-examination of Ms. Hojsak consumes sixty-one pages. See RT 76-137. Forty-two of those pages, RT 80-122, are centered on the invoices. This hearsay was the heart of the government's cross examination of Ms. Hojsak. It should not have been admitted. That hearsay undermined Ms. Hojsak's testimony and is one of the factors that led to the conviction in this case. The admission of that hearsay requires this Court to grant a new trial.

Not only was the hearsay from the invoices inadmissible. The questioning of Ms. Hojsak about the inadmissible invoices was improper. As the Ninth Circuit observed in United States v. Sanchez, 176 F.3d 1214, 1222 (9th Cir. 1999),

> [i]t is improper "under the guise of 'artful cross-examination,' to tell the jury the substance of inadmissible evidence." Citing United States v. Hall, 989 F.2d 711, 716 (4th Cir.1993); see also Goldsmith v. Witkowski, 981 F.2d 697, 704 (4th Cir.1992) (prosecutor may not present inadmissible evidence through the "back door"); United States v. Check, 582 F.2d 668, 683 (2d Cir.1978) (prosecutor may not introduce inadmissible hearsay through "artful" cross-examination); United States v. Simtob, 901 F.2d 799, 805 (9th Cir.1990) ("[P]rosecutor's discussion of [prosecution witness's] remarks in relation to earlier statements which were not before the jury (and of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 15 of 21

1
2
3
4
5
6
7
8

which the jury could assume only the government was aware) could have implied that the government had certain knowledge whether [the witness] was in fact telling the truth."). As we have previously observed, "while prosecutors are not required to describe sinners as saints, they are required to establish the state of sin by admissible evidence unaided by aspersions that rest on inadmissible evidence, hunch or spite. <u>United States v. Schindler</u>, 614 F.2d 227, 228 (9th Cir.1980).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

   Here, there was no evidence to establish the contents of the invoices, and the only reason they were discussed was to impeach Ms. Hojsak.  "The government must not knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony."  <u>United States v. Gilbert</u>, 57 F.3d 709, (9th Cir 1995) citing <u>United States v. Gomez-Gallardo</u>, 915 F.2d 553, 555 (9th Cir.1990) (<u>quoting</u> <u>United States v. Whitson</u>, 587 F.2d 948, 952-53 (9th Cir.1978)).  Impeachment is improper when employed as a guise to present substantive evidence to the jury that would be otherwise inadmissible.  <u>Id</u>.  A determination must be made as to whether the government examined the witness for the primary purpose of placing before the jury substantive evidence which is otherwise inadmissible.  <u>Id</u>.  There was no other reason to cross-examine Ms. Hojsak about the hearsay contents of the inadmissible invoices.  That cross-examination requires a reversal of this conviction.

25
26
27

   This case is similar to <u>United States v. Gomez-Gallardo</u>, 915 F.2d 553 (9th Cir.1990).  In <u>Gomez-Gallardo</u>, the government called a co-defendant to testify in its case-

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 16 of 21

in-chief. Id. at 554. The witness testified that he pled guilty to a conspiracy with the

defendant to distribute cocaine. Id. He then asserted that the defendant was innocent-

testimony which was consistent with his previous testimony given outside of the presence

of the jury. Id. The government then proceeded to impeach his credibility. Id. The court

held that the government committed plain error by calling the witness for the primary

purpose of impeaching his credibility (id. at 555-56) and reversed the conviction. Here the

only reason the government attempted to get the hearsay from the invoices before the jury

was to impeach the invoices and Ms. Hojsak, by claiming that the invoices were a

fabrication by Ms. Hojsak. The problem with this argument is that there is no admissible

evidence to support it.

The cross-examination about the inadmissible contents of the invoices requires a

reversal of this conviction.

**V.    THE ALLEN INSTRUCTION WAS COERCIVE UNDER THE FACTS OF
THIS CASE AND INDICATES THE COURT SHOULD  GRANT A NEW
TRIAL**

The Allen instruction, even in its approved form, is one of the most controversial

jury instructions in all of criminal law. Nicknamed the "dynamite charge," this instruction

attempts to "blow-up" a deadlocked jury in an effort to reach a verdict. United States v.

McElhiney, 275 F.3d 928, 936-37 & n.3 (10th Cir. 2001). This Circuit has held that the

standard Allen charge " 'stands on the brink of impermissible coercion' and that 'even in

the most acceptable form, (the Allen charge) approaches the ultimate permissible limits to

which a court may go ....' " United States v. Mason, 658 F.2d 1263, 1266 (9th Cir. 1981)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN
THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 17 of 21

(internal citations omitted).  A variance from the approved <u>Allen</u> instruction or other surrounding factual circumstances can push an <u>Allen</u> charge across the "brink" and into the realm of impermissible coercion. <u>Id</u>.  Courts should assess the potential coerciveness of and Allen charge in light of the totality of the circumstances.  See <u>Weaver v. Thompson,</u> 197 F.3d 359, 366 (9th Cir. 1999).  In this case, those circumstances demonstrate the coercive effect of the charge.

To analyze whether an <u>Allen</u> charge is coercive, the Ninth Circuit looks to 1) the form of the jury charge, 2) the amount of time of deliberation following the charge, 3) the total time of deliberation and, 4) other indicia of coerciveness or pressure.  <u>Weaver v. Thompson</u>, 197 F.3d 359, 366 (9th Cir. 1999).

In this case, these factors conclusively demonstrate the coercive effect of the <u>Allen</u> charge in this case.

On Wednesday, at about 3:00 p.m. in the afternoon after almost a full day of deliberation, the jury reported they were deadlocked.  Over objection, the Court gave an <u>Allen</u> charge in the form suggested by the Ninth Circuit jury instructions.  At 4:00 p.m., when the jury was scheduled to go home for the day, the jury again reported they were deadlocked and the Court had a discussion with counsel about what to do.  Defense counsel requested that the jury be declared deadlocked.  It was apparent to the Court, to the government and to defense counsel, that the jury wanted to go home and did not want to continue to deliberate.  After some discussion, in which the Court indicated that based upon what it had seen, it did not believe that the jury would be able to come to a verdict in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

this case, and after defense counsel refused to consent to a poll of the jury, the Court decided not to discharge the jury and told them to come back the following day.

The jury returned the following day, knowing that the judge wanted them to return a verdict, and after having learned that even if they declared themselves deadlocked at the end of the day, they would be ordered back.

Thursday began with a lengthy read back of Ms. Hojsak's testimony. During that read back, counsel observed the jurors taking careful notes during Ms. Hojsak's testimony as she described her efforts to give her accountants all of her records and as she described the business relationship with and the payments of commissions to Michael Yell.

The jury then went to deliberate. At about 3:15 they asked whether a defendant could rely upon deductions that were not included in her original return. That question was answered, and just in time to make the 4:00 p.m. deadline, the jury announced they had a verdict. Under these circumstances, the reading of the <u>Allen</u> charge, combined with the Court's ordering the jury to return the next day, after twice declaring themselves deadlocked and indicating a strong desire to go home, demonstrates just how coercive the <u>Allen</u> charge, combined with the order to return the next day was in this case. The jury was faced with two options, a unanimous verdict, or another day in the jury room. Under these circumstances, no juror could hold out for what he or she believed was the appropriate verdict and the jurors who had earlier declared their belief that Ms. Hojsak was not guilty changed their votes. The timing demonstrates those changes were the result of coercion and requires a new trial in this case.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

## VI.    CONCLUSION

This was a close case as shown by the jury's twin statements it was deadlocked, and the experienced Court's observations that it doubted a verdict would be reached.  The government had to prove that a woman who grew up in China, had no experience with United States tax laws, was engaged in a business that took place entirely in China, from which taxes were withheld prior to any payments, and relied upon professionals in both China and the United States somehow both knew of her United States tax obligations and willfully avoided them.  The difficulty of proving this case with admissible evidence led to an attempt to discredit Ms. Hojsak with inadmissible hearsay.  That questioning was improper and was the most important part of the government's cross-examination.

When the jury was given the legal standards to guide its deliberation, it did not receive an instruction defining good faith in its original instructions, and never received an instruction outlining the theory of defense, that Ms. Hojsak told everything to her advisors, both in China and the United States and relied upon them to prepare her taxes.

Despite, the admission of the hearsay material, and despite the failure to hear instructions outlining Ms. Hojsak's defense, the jury twice declared itself deadlocked, and only after learning that an announcement of a deadlock would lead to another day in the jury room, did the jury convict.  The timing of that decision, at the last possible moment before the time it had learned a deadlock announcement would require it to return for another day, demonstrates both the coercive effect of the <u>Allen</u> charge and some jurors' desire to hold out as long as possible.  It is impossible to say that these factors, the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

admission of the hearsay, the failure to give a defense theory of the case instruction, and the <u>Allen</u> charge did not affect the verdict.  Accordingly, this Court should grant a new trial in this case.

DATED: June 11, 2008                    Respectfully submitted,


                                        /s/Christopher Cannon

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL
CR-07-0325-PJH

Page 21 of 21